## HILL *vs.* LAFAYETTE INSURANCE COMPANY.

Under the act of 1851, pages 311 and 312, it was not intended by the Legislature that where a case at law had been tried by the Judge below, parties should be at liberty to have it re-heard in this Court. The Court are to judge of the case as if it was an application for a new trial, and to ascertain from the whole record whether the Circuit Judge manifestly erred, either in his conclusions upon the facts, or in respect to the law applicable to the the case.

Whether witnesses can be receivable to state their views in relation to the materiality of facts withheld from insurers, at the time of the execution of the policy, *quere?*

Where the fact of a pending litigation affecting premises insured, was not communicated to the insurer by the insured, at the time of executing the policy, it was held the omission to disclose did not vitiate the policy.

Case from the Wayne Circuit.

This was an action brought in the Wayne Circuit Court to recover $1600 on a policy of insurance made by defendants on one-third of a mill at Ann Arbor.

The insurance was effected through an agent of defendants, at Detroit. The policy contained the following clause: "And the assured covenants and engages that the representations given in the application for this insurance, contain a just, full, and true exposition of all the facts and circumstances in regard to the condition, situation, value, and risk of the property insured, so far as the same are known to him, and material to the risk, and that if any material fact or circumstance shall not have been fairly represented, or if he shall have made, or shall hereafter make any other insurance on said property, without the knowledge and consent of said company, or if the said property should be removed

without necessity, to any other place, or if the situation or circumstances affecting the risk thereupon, shall be so altered or changed, by or with his advice or consent, as to increase the risk thereupon, or said property shall be sold, or if this policy shall be assigned without the consent of the company, or if the assured shall make any attempt to defraud the said company, that in every such case the risk hereupon shall cease and determine, and the policy be null and void, unless confirmed by a new agreement thereupon written, after a full knowledge of such facts and circumstances:

"And it is further agreed, that in case there should be any other insurance made, as aforesaid, on the property hereby insured, whether prior or subsequent, that the assured shall be entitled to receive on this policy no greater proportion of the loss sustained than the sum hereby insured bears to the whole amount insured thereon."

On the 1st of October, 1851, the policy being still in force, the mill was destroyed by fire, and the usual notice and proof thereof furnished defendants.

It appeared on the trial, that on or previous to December 19, 1848, G. D. Hill, and E. and J. White, were partners in trade, by the name of Hill, White & Co.; that said Whites were each seized in fee of one-third of the mill, and G. D. Hill held the other undivided one-third, under a bond or contract, made to him by one Hooper, dated, acknowledged, and recorded September 26th, 1848, conditioned for the conveyance of said interest, on the payment of $1,625, as therein specified, the last payment falling due in eighteen months from the date; and payments to the amount of $436 92, being indorsed at the date; that on said 19th December, Sackett & Co., creditors of Hill, White & Co., attached all the interest of the members of the firm in said mill, recovered judgment, and all of said interest was sold on execution, under said judgment, and bid in by Sackett & Co., and not being redeemed, a sheriff's deed was delivered to them, and recorded September 10, 1850. That on the 30th of December 1848, Hill, White, & Co., made an assignment of all their property for the benefit of creditors to one T. C. Cutler. Under the assignment, the Hooper contract with G. D. Hill, passed into the hands of Cutler, who accepted the trust, and took possession of the mill; and on the 1st of September, 1849, leased it to

plaintiff. In June, 1850, Hooper called on Cutler, and on G. D. Hill, and on Maynard, (the individual assignee of G. D. Hill,) and notified them that unless they paid the balance due on his contract to said G. D. Hill for the one-third of said mill, he should sell the same to some one else, and they all declined paying, and the Whites directed Cutler to pay nothing more, and on the 23d day of July, 1850, Hooper quit-claimed said one-third to plaintiff.

In December, 1850, Sackett & Co. filed their bill in chancery against plaintiff G. D. Hill and others, (not joining Cutler, the assignee,) claiming title to the whole of the mill under their attachment proceedings; among other things, praying that an account might be taken of the balance of the purchase money remaining due on Hooper's contract to G. D. Hill, and that plaintiff might be decreed to release to Sackett & Co. all his claim on being paid the balance due on said contract. Plaintiff filed his answer, March 20, 1851, denying the complainant's title as set up in their bill, and the suit remained pending at the trial of this cause. No replication was proved to have been filed. The fact of the pending litigation was not communicated to the defendants' agent at the time of effecting the insurance. It appeared by the testimony of three witnesses, who were and for several years had been insurance agents in Detroit, that the fact of a pending litigation respecting the title of property was material to the risk, and that such fact, if known, would either increase the premium, or lead to a total rejection of the risk; that such fact was regarded among insurers as material to a risk; and, on cross-examination, said witnesses gave as reasons why such fact was material, that the assured might be tempted to fire his property, or, in case of accidental fire, be less disposed to make exertions to put it out, or less vigilant to guard against fire.

It appeared that at the time Hooper called on Hill and others for the balance of his contract, there was due on it between $1200 and $1300, and the premises thereby contracted were worth about $3000. It also appeared by the testimony of a witness who was an insurance agent at Ann Arbor, that the fact of the pending litigation was material, but the reason was the possibility that the assured might, out of revenge or interest, fire the property as in case of over insurance.

The Court below held, that on the foregoing facts, it did not appear that the pending litigation was a fact so material to the risk, that its non-communication by the plaintiff would vitiate the policy, to which the defendants excepted, and the Court gave judgment for the plaintiff.

*L. Bishop*, for plaintiff.

*Lothrop & Duffield*, for defendants.

By the Court, WING, P. J.

This case was tried by the Circuit Judge of the Circuit Court of Wayne County, and was brought to this Court for the purpose of review, under the provisions of the law of 1851, pages 311 and 312, and presents the question how far the Court will go in reviewing the decision of a Circuit Judge.

It appears to us, from an examination of the statute, that it was not intended by the Legislature that parties to suits in Circuit Courts, should be at liberty to have a case at law reheard in this Court, upon the merits, in the same manner as in the Circuit Court, (except that the proof is spread out in the record,) otherwise it would be like an appeal in chancery, where the case is to be reheard upon the merits. We think that the Court are to judge of the case as if it were an application for a new trial, and that in this case, the Court is to ascertain from an inspection of the whole case, whether the Circuit Judge manifestly erred either in his conclusions upon the facts, or in respect to the law applicable to them.

The ground of defense to this action, and upon which the defendants refused to pay the amount insured, was, that the property was encumbered by litigation at the time the policy was executed, that this fact was material to the risk; that plaintiff did not disclose it to defendants at the time the policy was executed, and, therefore, that the defendants were not liable on the policy.

To establish this defense, the defendants introduced three witnesses, who were permitted to swear that "the fact of a pending litigation respecting the title of property, was a fact material to the risk, and that such fact would, if known, either increase the premium, or lead to a total rejection of the risk; that such fact was regarded among insurers as

material to the risk, because the insured might be tempted to fire his property; or in case of accidental fire, be less disposed to make exertions to put it out, or less vigilant to guard against fire."

It is manifest that this evidence, if it is to be taken precisely as given, governs the case, both as to the law and the facts, and that the jury or the Court have only to find in the language of the witnesses.

●As a general principle, witnesses are not receivable to state their views on matters of legal and moral obligation, nor on the manner in which other persons would probably be influenced, if the parties acted in one way rather than in another; for whether a particular fact is, or is not material, is a question for the jury to decide, under the circumstances. (1 *Green. Ev.*, § 441; 2 *Ib.*, § 397.) Neither can a witness be asked what would have been his own conduct in the particular case. But in reference to this class of cases, it appears to be unsettled, both in England and in the United States, whether witnesses can be receivable to state their views in relation to the materiality of facts withheld from insurers, at the time of the execution of the policy. The following cases are opposed to the reception of such evidence: (3 *Burrows R.*, 1905; 1 *Holt. N. P.*, 243; 5 *Barn. & Adolphus*, 840; 2 *M. & W.*, 267.) The following cases favor its reception: (1 *Arnold on Insurance*, 571; 2 *Starkie's R.*, 229; 4 *B. & P.*, 151; 4 *East.*, 590; 10 *B. & C.*, 527; 10 *Bing.*, 57.)

In this country, the following cases are opposed to such evidence: (2 *Green. Ev.*, § 397; 1 *Ib.*, § 441; 7 *Wend.*, 72; 17 *Ib.*, 137, 164; 4 *Denio*, 311; 23 *Wend.*, 425.) In favor of its admission, are (*Kent's Com.*, Vol. 3, *p.* 484, *in note; Duer on Insurance*, 683, '4, *and note*, *page* 780.)

Mr. Smith, in his Leading Cases, 1 vol. pages 544, 545, (Am. edition by Hare & Wallace,) after citing and discussing all the English cases upon this point, remarks, that "such being the state of the authorities, the question of admissibility can be hardly, even now, considered as settled. The difference is, however, perhaps less upon any point of law, than on the application of the settled law to certain states of facts; for, on the one hand, it appears to be admitted that the opinion of witnesses possessing peculiar skill, is admissible whenever the subject matter of inquiry is such that inexperienced persons are unlikely to

prove capable of forming a correct judgment upon it without such assistance; in other words, when it so far partakes of the nature of a science as to require a course of previous habit or study, in order to the attainment of a knowledge of it; while, on the other hand, it does not seem to be contended that the opinions of witnesses can be received when the inquiry is into a subject matter, the nature of which is not such as to require any particular habits or study in order to qualify a man to understand it." The author proceeds: "Now the question of materiality in an assurance, seems one which may possibly happen to fall within either of the above two classes; for it is submitted that it may happen in cases of sea policies, that a communication, the materiality of which is in question, may be one, respecting the importance of which, no one except an underwriter, can, in all probability, form a correct conclusion." And see the remaining portion of the note.

Judge Duer, in a note to his treatise on Insurance, page 786, says; "these (last) remarks in truth concede the question at issue, for it is not contended that the evidence ought to be received, except in cases where the knowledge and experience of underwriters give a peculiar value to their opinions."

Let us apply these principles to this case. The witnesses state that the fact of a "pending litigation was material to the risk;" the reason given, is, that, "if known to the insurer, it would have increased the premium, or led to a total rejection of the risk, because the assured might be tempted to fire his own building or neglect it, &c.

It appears to me that the reason given by these witnesses, shows that it is not a question of science or skill, or which requires peculiar habits or experience to enable a person to perceive or understand it. It is a mere deduction of reason from a fact, founded upon the common experience of mankind, that a man may be tempted to do wrong, when placed in circumstances where his cupidity may be excited. A jury does not need evidence to convince them that this may be the effect. As well might a Court receive the evidence of judges and officers of Court against a man indicted for a crime, that men generally act as the prisoner is charged to have done when placed under the like temptation and circumstances. A bare suggestion to the jury of the very well understood connection between such a condition of things and its ordi-

nary result, would enable them to apprehend the matter in all its bearings, and it would not need the testimony of witnesses to guide their minds to a proper conclusion as to its effects upon the risk. It is a matter addressed to the jury, which they must decide, and the evidence, whatever it may be, is not conclusive upon them. (*Arnold on Insurance*, 441; 2 *Greenleaf's Ev.*, § 378; 1 *Ib.*, § 441.) Here the witnesses swear that the fact disclosed, "would have increased the risk," &c. This, the jury is to determine under all the circumstances of the case. The additional fact stated by the witnesses, viz: that "such fact was regarded among insurers as material to the risk," cannot be a conclusive effect upon the case, for its legal effect must be dependent upon the ascertainment of the previous fact, which lies at the bottom of the whole matter, viz: whether, in the particular case, it was material to the risk; otherwise the secret opinions of insurers would govern and make a law for each case, and defeat all insurances. We do not pretend to lay down any rule, we have only endeavored to ascertain whether the rules applicable to the evidence in this case, give to it any peculiar and conclusive effect, and we think they do not.

Independent of the evidence, the question of the materiality of the fact of the pending litigation is fairly presented; but assuming that the evidence was admissible, we are of the opinion upon the whole case as presented, that the pending litigation disclosed in this case, was a fact which, in the present state of the law upon this subject, and the practice of insurers, as evidenced by the cases, did not affect the risk. We do not say in general terms, that such a fact may not be, in some cases, material to the risk; but we think that this fact is not so obviously connected with the true description of the property insured, as that the failure on the part of the assured to make a voluntary disclosure of it to the insurer, should avoid the policy.

The statements of the witnesses must be taken with some qualification; they cannot be understood as meaning to say, that the mere fact of litigation, and having no reference to its character, is in all cases, and under all circumstances, material to a risk, for it is easy to suggest cases of so trifling a character, that they could have no bearing upon the risk; whether they would or would not affect the mind of the insurer is to be judged of by the jury, and is not to be assumed by the witnesses;

for it is the fact to be demonstrated by the verdict of the jury, and their conclusions must be dependent to some extent, upon the nature and importance of the litigation. In many cases no judgment could be formed of its importance, without an examination into complicated matters involved in the litigation, which could not be done without a trial of the cause. It may be fair to assume in a given case, that litigation would be a matter material to the risk; but in a case like this, where its character is so easily understood, it cannot be assumed that our investigations are to end with a knowledge of the fact that there was a pending litigation in regard to the property, not voluntarily disclosed by the assured.

. On looking into the books we do not find a case where it has been held that a pending litigation, not voluntarily disclosed by the assured, avoids the risk. Applications to insurance agents are usually made out on blanks, furnished by them. These applications contain a list of questions to be answered, referring to every fact that is supposed to be material to the risk, or in reference to which, the insurer wishes information. The fact not disclosed, and which is complained of in this case, is a collateral matter; and if it is not, it would be so esteemed by every honest man. It would not occur to any one but a knave, that facts, which would lead the insurer to speculate upon the probability of his integrity, but which did not relate to the true position of the property, would have any influence upon his mind. His attention is not drawn to considerations which have relation to the qualities of his own heart, but which do not bear upon the true description of the property and the objects that surround it.

· It is true, that a case like that in (17 *Wend. R.*, 366, '7,) might well call for a voluntary disclosure. An insurance was effected on a store; the insurer was subsequently informed that the store of the assured had been repeatedly burned, and he was suspected of having burned his own store; this led the insurer to insure his risk; in doing so he did not disclose to his insurer this fact, of which he had recently been informed by a friend, and which was the immediate cause of his procuring the re-insurance; that was a manifest hazard, and it was held to avoid the policy.

That the usual questions were put to the insured in this case, is manifest from the covenant in the policy. The insured engages that the representations made in the application for the insurance, contain a just, full, and true exposition of all the facts and circumstances in regard to the condition, situation, value, and risk of the property insured, so far as the same are known to him, and are material to the risk, and that if any material circumstance shall not have been fairly represented, the policy shall be void. A man might well infer from this covenant, that the last clause related to the fairness of the representations already made, rather than to those that might have been forgotten, or that did not relate to the actual condition of the property. It is, however, true, that the rule of law applicable to such cases, requires disclosures of material facts, independent of any covenant. Then where shall an honest man look for a guide, in such cases? The law furnishes no tolerably accurate rule, which will enable him to ascertain what is the limit of the necessary disclosures to be made by him. It is objected that the pending litigation was not disclosed; but suppose a litigation about some other interest in the same mill, between other parties, or in relation to an adjoining building, or any one of the buildings in a block, or contiguous to, or more or less remote from, the property insured; hundreds of possible cases might be supposed, which might affect the risk, or which might affect the mind of the insurer had he known it, which, it might never occur to the insured, had any necessary or probable connection with the risk.

It will be observed that it is of no importance whether the fact not disclosed, and which is claimed to be important, was known to the assured, or whether the omission to give information of it, results from design, or from ignorance of the materiality of the fact, or the duty of disclosing it to the insurer, it is enough that the insurer has been misled, and has thus been induced to enter into a contract, which, upon correct and full information, he would either have declined, or would have made upon different terms.

All men conversant in such matters know that in England, and in most of the United States, the interest of the insured in the property insured need not be disclosed. It is sufficient that the subject matter of the insurance and the nature of the risk are set forth in the policy,

without stating the nature or character of the interest for which the insurance is intended as a protection, unless inquiry is made. (2 *Am. L. Cases*, 450.) In the case of Bixby *vs.* the Franklin Insurance Company, (8 *Pick.*, 86;) it was held that the nature of the interest held by the insured need not be disclosed to the insurer, unless specially inquired by him; and even when the insured, in answer to an inquiry made by the insurer, had represented the house as his own, without stating that it was mortgaged for nearly the whole of its value, and that the equity of redemption had been levied on under an execution, on which it was soon afterwards sold, it was held that this statement, even if it was not substantially true, had no bearing on the risk insured which the law would recognize, and therefore would not discharge the insurance. This decision is in accordance with the rule of law as held in England, Massachusetts, and New York. The probability, growing out of the facts stated in the case last cited, of a temptation to destroy the property was much greater than in the case before us.

The Courts of the United States, in (2 *Pet.*, 25;) and subsequently in (10 *Pet.*, 507;) have held that the assured must correctly disclose his interest in the property insured, and so in Illinois. (1 *Gil.*, 286.) These cases proceed upon the ground that a greater or less amount of interest in the thing insured, would present stronger or weaker temptation to the assured to burn or neglect the property.

We are persuaded that in many cases, litigation in which property may be involved, might present a strong temptation to the insured to burn it, and, therefore, this might materially affect the risk, and yet as the fact that it was not disclosed, has never hitherto (so far as we can discover,) been deemed a defense to an action on a policy, we should, with much hesitation, admit the validity of such a defense, since it would operate as a snare to the insured. If it is true, as stated by the witnesses, that litigation increases the risk, why, among the many pointed questions put to the insured, is this not included? If litigation increases the risk to the insurer, it should not be left for them to take advantage of it as they might see proper under the general obligation imposed by the law, or the covenant for the assured to disclose it, but they should make it the subject of distinct inquiry, of the insured.

It is admitted by Mr. Duer, page 388, that the rule of law, (also embraced in the covenant,) is ambiguous; and he says, page 390, "the most reasonable opinion is, that those facts only, are necessary to be disclosed, which, as material to the risk, considered in their own *nature*, a prudent and experienced underwriter would deem it proper to consider." . But there is no process of reasoning, that can enable the assured to judge of the possible or probable influence on the mind of the underwriter, of circumstances, that in reality are extrinsic to the risk.

We are disposed to adopt the views expressed in 2 Am. L. C., page 460, that every purpose of justice and convenience must must be answered, by leaving it open to the assurers to demand such information, when they think it necessary, either by particular inquiries, or general clause or interrogatories contained in the policy or proposals.

This cause came before the Court on a case made under the provisions of Sec. 19 of act No. 179 of session laws of 1851, and was argued by counsel; and upon consideration thereof, and full deliberation being thereupon had, it is considered by the Court, that the finding of the said Circuit Court was in all respects legal and proper, and that the plaintiff recover of the said defendant, his costs in this Court, to be taxed.