ALLSTATE INSURANCE COMPANY v STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPANY

Docket No. 191759. Submitted February 4, 1998, at Detroit. Decided June
23, 1998, at 9:15 A.M. Leave to appeal sought.

Laura and James Smith brought an action in the Oakland Circuit
Court against Allstate Insurance Company and State Farm Mutual
Automobile Insurance Company, seeking a declaration regarding
which of the insurers is liable to the plaintiffs for negligence by
Bruce Walsh and Charles Hinton, Jr. An automobile driven by
James Smith and in which Laura Smith was a passenger had been
struck by an automobile driven by Walsh. Just before the accident,
Walsh had bought the car he was driving from Hinton, who signed
over to Walsh the vehicle title and removed from the automobile
his license plate, registration, and certificate of no-fault insurance
by State Farm. Allstate, the Smiths' no-fault automobile insurer had
denied their claim for uninsured motorist benefits. The court, Fred
M. Mester, J., on competing motions by State Farm and Allstate for
summary disposition, granted State Farm's motion and denied All-
state's motion. Allstate appealed.

The Court of Appeals *held*:

A named insured must have an insurable interest to support the
existence of a valid automobile liability insurance policy. At the
time of the accident in this case, Hinton did not have an insurable
interest in the automobile he sold to Walsh, having ceased to be its
owner and registrant by removing the license plate, registration,
and certificate of insurance by State Farm. Thus, the State Farm
policy was void for lack of an insurable interest on the part of
Hinton.

Affirmed.

INSURANCE — LIABILITY — AUTOMOBILES — INSURABLE INTERESTS.

A named insured of an automobile liability policy must have an insur-
able interest in the automobile; a person who in a bona fide sale of
an automobile removes from the automobile the person's license
plate, registration, and certificate of insurance ceases to be the
owner and registrant of the vehicle and therefore no longer has an
insurable interest in the automobile such that the person's automo-
bile liability insurance, if not already canceled, becomes void.

*Garan, Lucow, Miller, Seward & Becker, P.C.* (by *James L. Borin* and *Robert D. Goldstein*), for Allstate Insurance Company.

*Draugelis & Ashton, L.L.P.* (by *John A. Ashton*), for State Farm Mutual Automobile Insurance Company.

*Gerald A. Sniderman & Associates* (by *Gerald A. Sniderman*), for Laura and James Smith.

Before: SAAD, P.J., and WAHLS and GAGE, JJ.

WAHLS, J. In this declaratory judgment action, defendant Allstate Insurance Company appeals as of right from an order granting summary disposition for defendant State Farm Mutual Automobile Insurance Company. We affirm.

The insurance law issues presented here arise from an underlying lawsuit filed by plaintiffs Laura and James Smith against third parties. The underlying facts are undisputed. In the early evening of June 4, 1993, Charles Hinton, Jr., sold his 1977 Buick LeSabre to Bruce Walsh. Walsh paid for the car, and Hinton gave him a receipt. Hinton then signed the title over to Walsh, removed his license plate, registration, and certificate of insurance from the car, and gave Walsh possession of the car. Hinton had insured the car through defendant State Farm Insurance. While driving the LeSabre a few hours later, Walsh rear-ended a vehicle driven by plaintiff James Smith, and in which plaintiff Laura Smith was a passenger. Laura Smith was injured in the accident. Although Walsh had placed a license plate on the LeSabre when he bought it, he had not obtained insurance. Plaintiffs initially sought uninsured motorist benefits from their own

insurer, defendant Allstate Insurance Company. However, Allstate denied coverage, contending that Walsh was covered by Hinton's policy with State Farm. Plaintiffs then sued Walsh for negligence and Hinton for negligent entrustment. Hinton subsequently filed a motion for summary disposition, but agreed to hold it in abeyance to permit plaintiffs to file the instant declaratory judgment action. Plaintiffs sought a determination regarding which insurer, Allstate or State Farm, is liable for plaintiffs' damages. As noted above, the trial court granted summary disposition for State Farm.

The only issue on appeal is whether Walsh was covered by Hinton's policy with State Farm at the time of the accident, despite the fact that Hinton no longer owned the vehicle. In its motion for summary disposition and accompanying brief, State Farm never argued that the language of the policy excluded Walsh as an insured.[1] Instead, State Farm argued that, because Hinton had sold the vehicle in a bona fide sale, and because he had removed the license plate, registration, and proof of insurance from the vehicle, Hinton was no longer the owner or registrant of the vehicle, and there could be no coverage under the State Farm policy.

The parties and the trial court all relied on *Clevenger v Allstate Ins Co*, 443 Mich 646; 505 NW2d 553 (1993). In *Clevenger*, JoAnn Williams sold a car to her nephew, Douglas Preece. Preece paid Williams for the car, and Williams signed the title over to Preece.

---

[1] Indeed, the lower court file did not contain a copy of the State Farm policy. In addition, neither party attached a copy of the policy to its brief. We express no opinion regarding the extent of coverage under Hinton's policy.

However, Williams allowed Preece to drive the car away with her license plate still attached, and with her registration and certificate of insurance in the glove box. Williams had insured the car through Allstate under a no-fault insurance policy. On his way home, Preece was involved in a head-on collision in which the plaintiff, Clifford Clevenger, was injured. Preece had not yet obtained his own insurance. Clevenger eventually filed an action seeking a declaratory judgment that Allstate had a duty to defend and indemnify Williams and Preece under Williams' no-fault policy. *Id.* at 648-649.

In *Clevenger*, the Supreme Court began by reviewing the language of Williams' no-fault policy, eventually concluding that, under the express terms of the policy, Allstate was obligated to defend and indemnify both Williams and Preece. *Id.* at 652-656. The Court then went on to address the question whether Williams had an insurable interest in the vehicle at the time of the accident. The Court found that, because Williams had left her license plate on the car, and because she had left the registration and certificate of insurance in the glove box, she remained the registrant of the vehicle. After noting that Michigan law imposes a duty on a registrant to maintain statutorily required insurance, the Court concluded that Williams had an insurable interest in the vehicle. *Id.* at 656-661. The Supreme Court did not discuss the underlying rationale for the insurable interest requirement, nor did it cite any authority on the topic. *Id.* However, it appears that the Court held that an insurable interest is necessary to support a valid automobile liability insurance policy. It also appears that the Supreme Court held that the insurable interest must

belong to a "named insured." We base our interpretation of *Clevenger* on the fact that (1) the Supreme Court addressed the defendant's "insurable interest" argument on the merits, rather than simply stating that there is no such requirement for automobile liability insurance, and (2) the Supreme Court only addressed the question whether the named insured, Williams, had an insurable interest, when it was clear that Preece had an insurable interest.[2]

We note that the Supreme Court's holdings do not represent forgone conclusions. There is a legitimate question whether liability insurance requires an "insurable interest." See *Hall v Weston*, 323 SW2d 673, 678-680 (Mo, 1959). Indeed, the "insurable interest" doctrine seems to find its origin in public policy concerns.[3] Among those concerns is a desire to prohibit the use of insurance as a form of wagering,[4] and a desire to prevent the creation of socially undesirable interests, such as where a creditor buys insurance on the life of a debtor for an amount greatly exceeding

---

[2] The Supreme Court had already determined that Preece was an "insured" under Williams' policy. *Clevenger, supra* at 653.

[3] See *Hartford Fire Ins Co v Evans*, 255 SW 487, 489 (Tex Civ App, 1923) ("The principle prohibiting insurance in favor of one having no insurable interest therein is one of public policy.").

[4] See *Crossman v American Ins Co*, 198 Mich 304, 308; 164 NW 428 (1917); *Secor v Pioneer Foundry Co, Inc*, 20 Mich App 30, 34; 173 NW2d 780 (1969). As the Court in *Crossman* stated:

Policies of insurance founded upon mere hope and expectation and without some interest in the property, or the life insured, are objectionable as a species of gambling, and so have been called wagering policies. All species of gambling policies were expressly prohibited in England by Stat. 19 Geo. II, chap. 37, and have been treated as illegal in this country upon the principles of that statute, without acknowledging it as authority. Here, such contracts of insurance are treated as contravening public policy, and are therefore void. [*Crossman, supra* at 308.]

the amount of the debt, such that the creditor "might be [tempted] to bring the debtor's life to an unnatural end." *Lakin v Postal Life & Casualty Ins Co*, 316 SW2d 542, 551 (Mo, 1958). These public policy concerns are not implicated in the case of liability insurance, because the holder of the insurance cannot collect cash on the policy.[5] We also note that the no-fault automobile liability insurance required in Michigan is not simply for the benefit of the policyholder or other insured. Rather, it is intended " 'to protect the members of the public at large from the ravages of automobile accidents.' " *Clevenger, supra* at 651, quoting *Coburn v Fox*, 425 Mich 300, 309; 389 NW2d 924 (1986). Thus, in the case of automobile liability insurance, the insurable interest appears to lie, at least to some degree, with an injured party rather than an insured.

While we have failed to discover any underlying rationale for application of the insurable interest requirement to liability insurance, we recognize that many jurisdictions observe such a requirement. See 1 ALR3d 1193, § 2, pp 1195-1196, and cases cited therein. In this case, the parties both appear to assume the applicability of the insurable interest requirement. Because *Clevenger* supports such a requirement, we conclude that, under Michigan law, an insured must have an "insurable interest" to support the existence of a valid automobile liability insurance policy.

---

[5] See *Progressive Northern Ins Co v Consolidated Ins Co*, 673 NE2d 522, 525 (Ind App, 1996) ("Because liability coverage merely indemnifies the insured to the extent that the insured is held liable, there is less risk that the liability policy will be used for illegitimate purposes, as compared to a policy against loss.").

Next, we consider whether the required insurable interest must belong to some particular "insured" under the policy. As noted above, the Court in *Clevenger* appeared to hold that a "named insured" must have an insurable interest. Again, the reasoning behind this conclusion is unclear,[6] and, once again, the parties have not addressed the issue. However, with *Clevenger* as our only guide, we conclude that a "named insured" must have an insurable interest to support a valid automobile liability insurance policy.

The only remaining question is whether Hinton had an insurable interest sufficient to support a valid automobile liability insurance policy. We conclude, pursuant to *Clevenger*, that he did not. In *Clevenger*, the seller of the vehicle had an insurable interest only because, by leaving the license plate on the car, and by leaving the registration and certificate of insurance in the car, she "voluntarily remained the insuring registrant" of the car. *Clevenger*, *supra* at 660-661. Here, Hinton did exactly what the Supreme Court suggested a seller do; he removed his license plate, registration, and certificate of insurance from the vehicle before giving Walsh possession. These actions, in conjunc-

---

[6] As with the conclusion that an insurable interest is necessary in the first place, there is room for disagreement on this point. See *Ohio Farmers Ins Co v Lantz*, 246 F2d 182, 185-186 (CA 7, 1957). There, the court recognized a distinction between property insurance and liability insurance:

> It is true that to support an action on a policy which insures a property right, i.e., against collision, fire, wind or theft, etc., an insurable interest in the named insured must be proved. On the other hand, where an insurance policy is one of indemnity against liability for loss and injury sustained by others and caused by the use of an automobile or other property named in the policy, an insurable interest in the named insured is not a prerequisite to a recovery against the insurer. [*Id.* at 185.]

tion with the bona fide sale of the vehicle, destroyed Hinton's status as owner and as registrant.[7] Unlike *Clevenger*, there simply are no facts from which we could infer that Hinton "voluntarily remained the insuring registrant." Thus, at the time of the accident, Hinton had no remaining interest in the vehicle, he had no insurable interest, and the State Farm liability policy covering the LeSabre was simply void. Under these circumstances, the trial court properly granted summary disposition for State Farm.

Affirmed.

---

[7] Allstate argues that Hinton remained the registrant for an indefinite period after the sale. According to Allstate, in order to cast off his status as registrant, Hinton was required to cancel the registration with the Secretary of State or wait for the registration to expire. We find no authority for this proposition. Reading the applicable provisions of the vehicle code together, it is clear that the owner of a vehicle is responsible for registering it. See MCL 257.222-257.224; MSA 9.1922-9.1924 (instructing that the registration certificate and registration plate be delivered to the owner of the vehicle). If the owner transfers the title to the vehicle, she is required to remove the registration plates and transfer them, or retain them for transfer to another vehicle. MCL 257.233(1); MSA 9.1933(1). The code also makes it clear that the purchaser or transferee is responsible for obtaining a new certificate of title and registration certificate for the purchased vehicle. MCL 257.234; MSA 9.1934. However, the purchased vehicle is exempt from the registration and certificate of title provisions of the vehicle code for three days immediately following transfer of the title. MCL 257.216(1); MSA 9.1916(1). Implicit in this legislative scheme is the idea that a seller who complies with the statutory requirements by removing the registration plate, registration certificate, and certificate of insurance from the vehicle, is no longer a registrant of the vehicle. In *Clevenger*, the Supreme Court simply recognized that a person who transfers the title to a vehicle and allows the new owner to drive the vehicle away with her registration plate, registration certificate, and certificate of insurance, voluntarily remains the registrant of the vehicle. *Clevenger*, *supra* at 660-662.