MORRISON v SECURA INSURANCE

Docket No. 286936. Submitted November 10, 2009, at Lansing. Decided December 29, 2009, at 9:00 a.m.

Kevin L. and Candice S. Morrison brought an action in the Ingham Circuit Court, Thomas L. Brown, J., against Secura Insurance, seeking a declaration regarding its liability for damages for injuries sustained when a Chevrolet Cavalier driven by Sarah Jo Warfield struck plaintiffs' motorcycle. Before the accident occurred, JoEllen Schwartz Fisher, Warfield's mother, purchased an insurance policy from Secura that listed Fisher as the named insured and both Fisher and Warfield as drivers of the three vehicles insured, including the Cavalier. Warfield was the only person who ever drove the Cavalier. Fisher, the owner and registrant of the Cavalier, prepaid the premiums for the entire year. Fisher and Warfield lived in the same residence. Before the accident, Fisher transferred title to the Cavalier to Warfield, who applied for a new title and registered the vehicle in her own name. Secura defended, arguing that Fisher did not have an insurable interest in the Cavalier at the time of the accident and so the policy was void. The court found that Fisher had an insurable interest in the vehicle at the time of the accident and granted summary disposition in favor of plaintiffs. The Court of Appeals granted Secura's delayed application for leave to appeal.

The Court of Appeals held:

1. An insured must have an insurable interest to support the issuance of a valid automobile liability insurance policy under Michigan law. The insurable interest must be that of a named insured. However, an insurable interest need not be in the nature of ownership, but rather can be any kind of benefit from the thing so insured or any kind of loss that would be suffered by its damage or destruction.

2. Fisher did have an unambiguous insurable interest in the Cavalier when she purchased the insurance policy and paid the entire year's premiums. Although public policy forbids the issuance of an insurance policy where the insured lacks an insurable interest, public policy does not appear to require an otherwise valid insurance policy to become void automatically, particularly,

where, as here, the actual risk never changed and was fully known. The purpose behind the insurable interest requirement, to prevent an insured from committing illegal or unethical acts in order to collect insurance proceeds, is not present under the facts of this case. The conveyance of the Cavalier was an intrafamily transfer, which is not treated the same as a transfer between strangers. Public policy does not support terminating what amounts to a family insurance policy upon an intrafamily vehicle transfer. The trial court did not err by granting summary disposition for plaintiffs.

Affirmed.

TALBOT, P.J., dissenting, stated that a legal basis does not exist for finding the requisite insurable interest in this case. The judgment and order of the trial court should be reversed. An insurable interest in property requires some benefit or loss to inure to the insured. Merely because Fisher voluntarily remained the insurer after she was no longer the registrant of the vehicle is not analogous to a statutory requirement that she do so upon penalty of a criminal sanction and does not meet the benefit/loss requirement to establish the existence of an insurable interest. An insurable risk based on potential pecuniary loss comprises a loss that a named insured might incur but there is no recognized precedent for attempting to ensure the pecuniary loss of another without any commensurate benefit or risk of loss to a named insured.

INSURANCE — INSURABLE INTERESTS.

Fundamental principles of insurance require the insured to have an insurable interest before he or she can insure; a policy issued when there is no such interest is void and it is immaterial that it is taken in good faith and with full knowledge; an insurable interest need not be in the nature of ownership, but rather can be any kind of benefit from the thing so insured or any kind of loss that would be suffered by its damage or destruction; although public policy forbids the issuance of an insurance policy where the insured lacks an insurable interest, it does not appear to require an otherwise valid insurance policy to become void automatically.

*Sinas, Dramis, Brake, Boughton & McIntyre, P.C.* (by *Timothy J. Donovan* and *Steven A. Hicks*), for plaintiffs.

*Plunkett Cooney* (by *Christine D. Oldani* and *David K. Otis*) for defendant.

Before: TALBOT, P.J., and O'CONNELL and DAVIS, JJ.

DAVIS, J. Defendant appeals by delayed application for leave to appeal granted the trial court's order granting summary disposition for plaintiffs in this declaratory judgment action. We affirm. This appeal has been decided without oral argument pursuant to MCR 7.214(E).

This case arises out of an automobile accident in which a 1997 Chevrolet Cavalier driven by Sarah Jo Warfield struck plaintiffs' motorcycle. . Plaintiffs suffered serious injuries. At issue is the validity of a no-fault insurance policy covering Warfield's vehicle.

The relevant facts in this case are not disputed. The insurance policy at issue was purchased by Warfield's mother, JoEllen Schwartz Fisher, in October 2005. It listed Fisher as the named insured, but both Fisher and Warfield were listed as "drivers" of three vehicles, including the Cavalier. Warfield was the only person who ever drove the Cavalier. Fisher prepaid the premiums for an entire year. At the time she did so, she was the owner and registrant of the Cavalier. Fisher and Warfield both lived in the same residence at all relevant times. In March of 2006, Fisher transferred title to the Cavalier to Warfield, who applied for a new title and registered the Cavalier in her own name. The accident occurred on April 14, 2006. Defendant's sole argument[1] is that Fisher did not have an insurable interest in the Cavalier at the time of the accident, and so the insurance policy was void at that time.

---

[1] Defendant notes the (disputed) point that neither Fisher nor Warfield advised it of the change in ownership of the Cavalier, but we have not been presented with any argument suggesting that the policy's written terms dictated the policy's termination under the facts of this case. We note that the insurable risk to defendant has not changed, and defendant is free to cancel the policy upon sending notice to the insured as required by law.

"[U]nder Michigan law, an insured must have an 'insurable interest' to support the existence of a valid automobile liability insurance policy." *Allstate Ins Co v State Farm Mut Automobile Ins Co*, 230 Mich App 434, 439; 584 NW2d 355 (1998). Moreover, the insurable interest must be that of a " 'named insured.' " *Id.* at 440. This issue presents a question of law, which, like an order granting summary disposition, we review de novo. *Manzo v Petrella & Petrella & Assoc, PC*, 261 Mich App 705, 711; 683 NW2d 699 (2004).

The Court in *Allstate Ins Co* observed that the "insurable interest" requirement arises out of long-standing public policy. *Allstate Inc Co, supra* at 438. Specifically, it arises out of the venerable public policy against "wager policies"; which, as eloquently explained by Justice COOLEY, are insurance policies in which the insured has no interest, and they are held to be void because such policies present insureds with unacceptable temptation to commit wrongful acts to obtain payment.[2] *O'Hara v Carpenter*, 23 Mich 410, 416-417 (1871). Thus, "fundamental principles of insurance" require the insured to "have an insurable interest before he can insure: a policy issued when there is no such interest is void, and it is immaterial that it is taken in good faith and with full knowledge."[3] *Agricultural Ins Co v Montague*, 38 Mich 548, 551 (1878). However, an "insurable interest" need not be in the nature of

---

[2] Early caselaw held that the insured's interest could be so *de minimis* in comparison to the value of the insurance that there existed a temptation to destroy insured property, as long as the insurer was aware of the risk it was insuring against, but it too indicated that the insured must have had *some* interest. *Hill v Lafayette Ins Co*, 2 Mich 476, 484-485 (1853).

[3] The essential holding was that parties could not waive the insurable interest requirement, even if both the insured and the insurer mutually agreed to do so. *Id.*

ownership, but rather can be any kind of benefit from the thing so insured or any kind of loss that would be suffered by its damage or destruction. *Crossman v American Ins Co*, 198 Mich 304, 308-311; 164 NW 428 (1917).

Plaintiffs argue, and the trial court found, that Fisher had an insurable interest in the vehicle because she "certainly has an insurable interest in protecting her daughter from financial ruin." While any concerned parent clearly has an *interest* in his or her child's welfare, financial or otherwise, we need not take up the additional challenge of evaluating whether that interest is insurable—in other words, whether that interest is sufficiently tangible that it can truly be insured against.[4] We agree with the trial court's result because of several other striking characteristics of the facts in this case.

It is undisputed that Fisher *did* have an unambiguous insurable interest in the Cavalier at the time she purchased the insurance policy and paid the entire year's premiums. The caselaw we have found on the genesis and development of the "insurable interest" requirement shows that public policy forbids the *issuance* of an insurance policy where the insured lacks an insurable interest. Public policy does not appear to

---

[4] We do not mean to suggest that this issue should be lightly disposed of or that the trial court's conclusion is necessarily incorrect, only that we need not reach it. Parents who provide vehicles for their children are obviously interested in something other than personal pecuniary gain, and they are understandably concerned—not to mention of the view that it is a significant life event—when those children are finally "on their own." Furthermore, no-fault insurance is fundamentally not something from which one could profit anyway, its goal being indemnification rather than compensation. Considering, additionally, parents' natural interest in the well-being—physical, emotional, and financial—of their children, we would, at a minimum, conclude that the trial court's conclusion is worthy of serious consideration in an appropriate case.

require an otherwise valid insurance policy to become void automatically. Particularly where, as here, the actual risk never changed and was fully known (i.e., Warfield was always the only driver of the Cavalier). We emphasize that we are *not* presented with a situation in which Fisher attempted to *renew* the insurance policy covering the Cavalier after she had parted with any interest in it.

Furthermore, and even more significantly, the purpose behind the "insurable interest" requirement is not present here: we cannot imagine how Fisher, or anyone in her position, could possibly be tempted by the transfer of ownership to commit any illegal or unethical act in order to collect proceeds from the insurance policy at issue. The "insurable interest" requirement arose in the context of insurance policies payable to the insured. In such a circumstance, it is obvious how an insured with "nothing to lose" might be tempted to commit socially intolerable acts for financial gain. But the nature of the no-fault insurance at issue here is radically different. Because the insurance here is less likely to be exploitable as a "wager policy," the basis for the "insurable interest" requirement is weakened.

Finally, the conveyance of the Cavalier here was an intrafamily transfer. Family members share large portions of their lives and properties in ways that they do not share with strangers in arm's-length transactions, and intrafamily vehicle transfers, particularly between parents and children, are common. The word "family" can mean many things, but Michigan jurisprudence recognizes that the term more commonly refers to relationships in which multiple people live together under a head of the household who has a legal or moral duty to support the others or other. See *Rogers v Kuhnreich*, 247 Mich 204, 206-209; 225 NW 622 (1929).

Notwithstanding Warfield's being over the age of majority, she and Fisher were clearly "immediate family members." See *Latham v Nat'l Car Rental Sys, Inc,* 239 Mich App 330, 337-338; 608 NW2d 66 (2000). Transferring vehicles between family members is not treated the same as it is between strangers. See *Clevenger v Allstate Ins Co,* 443 Mich 646, 658-659; 505 NW2d 553 (1993). Public policy clearly recognizes that the family unit is, and always has been, entitled to a special status in the law. We would not find public policy supportive of terminating what amounts to a family insurance policy upon an intrafamily vehicle transfer.

Thus, we need not reach the issue whether, at the time of the accident, Fisher had an "insurable interest" in the Cavalier. Fisher did have an "insurable interest" in the Cavalier at the time the insurance policy was bought and paid for, the insured-against risk did not change, the basis for the "insurable interest" requirement is weak, and the public policy favoring family units is strong. The trial court's result was, therefore, correct.

Affirmed.

O'CONNELL, J., concurred.

TALBOT, P.J. (*dissenting*). I respectfully dissent from the majority opinion, which finds the retention of an insurable interest despite a change in the registration of ownership of a vehicle, impliedly based on a familial relationship between the insured and the registered owner.

"[U]nder Michigan law, an insured must have an 'insurable interest' to support the existence of a valid automobile liability insurance policy." *Allstate Ins Co v State Farm Mut Automobile Ins Co,* 230 Mich App 434,

439; 584 NW2d 355 (1998). "An insurable interest in property is broadly defined as being present when the person has an interest in property, as to the existence of which the person will gain benefits, or as to the destruction of which the person will suffer loss." *Madar v League Gen Ins Co* , 152 Mich App 734, 738; 394 NW2d 90 (1986), citing *Crossman v American Ins Co*, 198 Mich 304, 308-309; 164 NW 428 (1917). Moreover, the insurable interest must be that of a "named insured." *Allstate Ins Co, supra* at 440. Insurance policies "founded upon mere hope and expectation and without some interest in the property," are contrary to public policy and deemed void. *Crossman, supra* at 308; see also *Allstate Ins Co, supra* at 438-439.

In *Clevenger v Allstate Ins Co*, 443 Mich 646; 505 NW2d 553 (1993), our Supreme Court found that the registrant of an automobile had an insurable interest in an automobile she did not own because MCL 500.3101(1) required a registrant to carry no-fault insurance and MCL 500.3102(2) made it a misdemeanor to fail to do so. The Court concluded:

> As the registrant of a vehicle she permitted to be operated upon a public highway, [the seller] was required by the act to provide residual liability insurance on the vehicle under the threat of criminal sanctions, §§ 3101 and 3102. In this limited context, [her] insurable interest was not contingent upon title of ownership to the automobile but, rather, upon personal pecuniary damage created by the no-fault statute itself. [*Clevenger, supra* at 661].

This ruling is consistent with *Crossman's* definition of an "insurable interest" as requiring some benefit or loss to inure to the insured. The circumstances of this case are readily distinguishable. Warfield's mother was no longer a registrant of the vehicle at the time of the accident. Merely because she voluntarily remained the

insurer is not analogous to a statutory requirement that she do so upon penalty of a criminal sanction and, therefore, does not meet the benefit/loss requirement to establish the existence of an insurable interest.

Plaintiffs contend, and the majority concurs, that Warfield's mother had an insurable interest in the vehicle because she had a legitimate concern, impliedly as a parent and member of the same household, in saving her adult daughter from financial ruin that might result from liability for the automobile accident. However, there is no legal precedent for finding an insurable interest on this basis.[1] As explained in *Clevenger*, an insurable interest based on potential pecuniary loss comprises a loss that the named insured might incur. There is no recognized precedent for attempting to ensure the pecuniary loss of another without any commensurate benefit or risk of loss to a named insured.[2] In fact, public policy directly contradicts this concept. See *Crossman, supra* at 308, 311. Because a legal basis does not exist for finding the requisite insurable interest in this case, I would reverse the trial court's ruling.

---

[1] Plaintiffs assert that an insurable interest can be found on the basis of considerations apart from ownership and registration. See *Madar, supra*; *Universal Underwriters Group v Allstate Ins Co*, 246 Mich App 713; 635 NW2d 52 (2001); *Roberts v Titan Ins Co (On Reconsideration)*, 282 Mich App 339; 764 NW2d 304 (2009). However, these cases are distinguishable because they deal with personal protection insurance (PIP) benefits and not liability coverage.

[2] Plaintiffs also rely on *Stover v Secura Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued June 9, 2005 (Docket No 252613), for the proposition that an insurable interest need not be premised on being an owner or registrant. However, in *Secura*, the insurable interest was based on the named insured's risk of pecuniary loss resulting from having commingled funds with the owner of the vehicle. Unpublished cases are not binding precedent. MCR 7.215(C)(1).