*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

BETH BRACY,

        Plaintiff-Appellee,

and

ZMC PHARMACY, LLC, and MICHIGAN
SPINE & PAIN,

        Intervening Plaintiffs-Appellees,

and

RIVERVIEW MACOMB HOME &
ATTENDANT CARE,

        Intervening Plaintiff,

v

YOLANDA YVETTE NICHOLS,

        Defendant,

and

FARMERS INSURANCE EXCHANGE,

        Defendant/Cross-Plaintiff-Appellee,

and

GEICO INDEMNITY COMPANY,

        Defendant/Cross-Defendant-
        Appellant.

UNPUBLISHED
September 19, 2019

No. 341837
Wayne Circuit Court
LC No. 15-016675-NF

Before: LETICA, P.J., and M. J. KELLY and BOONSTRA, JJ.

BOONSTRA, J. (*dissenting*).

-1-

I respectfully dissent, not because I necessarily disagree with all or any of the majority's legal reasoning, but rather because I believe that we are putting the cart before the horse and reaching conclusions that might or might not prove to be supported were the legal process to run its course—as it has not yet in this case—in the usual and proper manner. It is sometimes tempting for appellate courts to cut to the chase and to decide all issues with finality even when they have not yet been fleshed out in the trial court. I believe that this is one of those cases, and that this Court should resist that temptation. While we may believe that all of the material facts in this case are undisputed, in my view this is a circumstance in which prudence would dictate that the trial court make that assessment first. See, e.g., *Rambin v Allstate Ins Co*; 495 Mich 316, 334-337; 852 NW2d 34 (2014) (concluding that the Court of Appeals made improper factual findings and erred by concluding that the material facts presented to the trial court were undisputed).

First, I am constrained to point out that the trial court did not articulate a comprehensible rationale for ruling as it did in denying defendant/cross-defendant-appellant GEICO Indemnity Company's (GEICO) motion for summary disposition and in granting defendant/cross-plaintiff-appellee Farmers Insurance Exchange's (Farmers) motion for summary disposition. I will not repeat in full what the trial court stated on the record as a basis for its ruling, but I found it seriously wanting in both clarity and detail. The trial court's statement left us with little basis on which we could properly evaluate its reasoning on appeal.[1]

I believe the majority recognizes this, inasmuch as the majority was itself left to "infer that the trial court found GEICO's proofs inadequate to establish fraud warranting rescission of the subject policy." But the trial court did not say that it had found such inadequacy, or why it did, other than the general statements that I have noted and found insufficient.

That said, the majority—while reversing the trial court's ruling—does not do so on the basis of the ruling itself. Rather, the majority evaluates anew whether (1) GEICO was the insurer of the owner, registrant, or operator of the 1993 Chevrolet Lumina that struck plaintiff, and whether, therefore, GEICO had an obligation to pay plaintiff's personal protection insurance

---

[1]The trial court noted that GEICO had supported its motion for summary disposition with an unsigned affidavit, and stated that "an unsworn unsigned affidavit cannot be considered in a Motion for Summary Disposition." Yet, while acknowledging that the record had been supplemented with a signed affidavit—which the record reflects occurred three days before the hearing—the trial court merely noted that "*at the time the Court read the motion* the affidavit was unsigned." (emphasis added). The court further stated, as a general proposition, that "summary disposition cannot be avoided merely by a parties [sic] conclusory assertions in an affidavit that conflict with the actual historical conduct of the party." Yet, the court offered no explanation of how that general proposition applied to this case or the affidavit in question. Finally, the court stated that it was granting Farmers's motion "[f]or those reasons and as more fully set forth in [Farmers's] brief," without in any manner addressing what those further grounds may have been. The trial court's subsequent order merely stated that it found there to be no genuine issue of material fact, without further explanation.

(PIP) benefits under MCL 500.3115(1), and (2) whether Marcus Nichols (Marcus)[2] lacked an insurable interest in the vehicle, rendering the GEICO policy (the Policy) void. And it makes a yeoman's effort to answer these questions. But these are questions that the trial court never addressed. Farmers, of course, did not raise these issues in its summary disposition motion. GEICO principally based its motion on its assertion of fraud, while addressing in only summary fashion the issues that the majority now decides for the first time. Even on appeal, the parties only address these issues in cursory fashion and engage in little, if any, analysis of the Policy's actual language. They do not address, for example: (1) whether an "additional driver" is entitled to PIP coverage under the Policy, (2) the effect of the Policy's coverage of the Lumina (particularly since the Policy provided for a $454.20 six-month PIP premium for the Lumina),[3] or (3) the proper interpretation of the Policy language as applied to the facts of this case and the interrelationship of various Policy provisions.

I note, for example, that the PIP provisions of the Policy appear to provide for benefits to a pedestrian (such as plaintiff) who is struck by an "insured auto."[4] "Insured auto" is defined as "an auto with respect to which **you** are required to maintain security under Chapter 31 of the Michigan Insurance Code and to which the **Bodily Injury** liability coverage of this policy applies and for which a specific premium is charged."

As noted, the Policy does reflect that a specific premium was charged for PIP coverage in relation to the Lumina. Additionally, a $186.60 six-month premium was charged for Bodily

---

[2] The record reflects that the Policy was issued to Marcus Nichols, and that, effective August 24, 2013, he added the Lumina to the Policy and added his mother, Yolanda Nichols, as an additional driver on the Policy.

[3] As the trial court noted, the Policy attached to GEICO's brief on appeal includes a Declarations Page reflecting coverage for the September 9, 2013 – March 9, 2014 time period; the accident underlying this cause of action occurred on August 23, 2014. I find it problematic that the Policy that we are being asked to apply includes a Declarations Page reflecting coverage for a time period other than when the accident occurred. Whether at the time of the accident the applicable Policy was the same as that which is in the record before us is, in my judgment, a critical detail that should be fleshed out in the trial court rather than simply assumed on appeal. On this record, however, we have only the Policy before us to assess.

[4] Analyzing MCL 500.3115(1), the majority focuses on whether GEICO was the "insurer" of the owner/operator of the auto, Yolanda Nichols. However, the Policy does not use the term "insurer," and the PIP portion of the Policy does not even use the term "insured." Conceivably, the majority's analysis may end up in the same place, but so far no one—not the parties, not the trial court, and not even the majority—has undertaken an analysis of the specific applicable Policy provisions. I do note, in relation to the majority's framing of the issue, however, that the PIP provisions of the Policy define "**Eligible injured person**" to include '[a]ny . . . person who suffers bodily injury while occupying an **Insured auto**." This suggests that if Yolanda had been injured in the auto accident, she would have been eligible for PIP benefits under the Policy if the Lumina met the definition of an "Insured auto" (which term I will discuss later in this opinion).

Injury Liability coverage in relation to the Lumina. The "Bodily Injury Liability" section of the Policy appears to provide coverage where an "Insured" becomes legally obligated to pay because of bodily injury to a person. "Insured" is defined in the Bodily Injury Liability section as "a person or organization described under PERSONS INSURED." The "PERSONS INSURED" provision of the Bodily Injury Liability section provides coverage to certain categories of persons "as **insureds**" depending on whether the automobile in question is an "owned auto" or an "unowned auto." Specifically, an "owned auto" includes "[a] vehicle described in this policy for which a premium is shown for these coverages." And an "unowned auto" includes "an automobile … not owned by or furnished for the regular use of either **you** or a **relative** …." It strikes me that the Lumina likely satisfies this Policy definition of "owned auto," and may also satisfy the Policy definition of "unowned auto" if Yolanda Nichols (Yolanda) does not fit within the applicable definitions of "you"[5] and "relative."[6] Conceivably, therefore, she might satisfy the definition of "PERSONS INSURED" and "Insured" under the Bodily Injury Liability section of the Policy.

At this juncture of this case, I am not comfortable assessing—nor do I believe it to be my proper role to assess— in the first instance whether, under the facts and circumstances of this case, "the **Bodily Injury** liability coverage" provisions of the Policy apply.. Nor do I believe that we should assess in the first instance whether, under the Policy, the Lumina was "an auto with respect to which **you** are required to maintain security under Chapter 31 of the Michigan Insurance Code." Consequently, in my judgment, we should not decide at this juncture whether, under the Policy, the Lumina was an "Insured auto" such that the PIP provisions of the Policy would afford coverage to the plaintiff pedestrian.

With regard to the majority's alternative determination that Marcus did not have an "insurable interest" insured by the Policy, the majority acknowledges that the issue "involves a fact-specific inquiry and may vary based upon the nature of the insurance benefits at issue," and that the "nature of the required insurable interest . . . has often been in dispute." Again, I would not resolve that "fact-specific inquiry" in this case without the trial court doing so first.

---

[5] "You" is defined in the Bodily Injury Liability section of the Policy to include "the policyholder named in the Declarations" and "his or her spouse if a resident of the same household." The Declarations Page does not identify a "policyholder," but it does identify the "Named Insured" as Marcus and "Additional Drivers" as Yolanda and another individual.

[6] "Relative" is defined in the Bodily Injury Liability section of the Policy to include "a person residing with you, and related by blood, marriage, or adoption, . . . provided neither such relative nor his/her spouse owns a **private passenger**, **farm** or **utility auto**." I note that aspects of Yolanda's deposition testimony provide support for the conclusion that she did not live with Marcus at the time of the accident; however, other aspects of her testimony are less clear. She testified, for example, that she "was staying with [Marcus] back and forth," and that Marcus "put [her] on the insurance with him, 'cuz [sic] I was moving in back and forth with family members because I didn't have a job and I lost my place, that was the whole issue."

-4-

Moreover, I note that this Court in *Morrison v Secura Ins*, 286 Mich App 569, 572-573; 781 NW2d 151 (2009), declined to decide whether, at the time of an auto accident, a named insured had an insurable interest with respect to a policy that insured, in part, a vehicle of which her daughter was the only driver and which was at that time titled in her daughter's name. The Court stated that "an 'insurable interest' need not be in the nature of ownership, but rather can be any kind of benefit from the thing so insured or any kind of loss that would be suffered by its damage or destruction." *Morrison*, 286 Mich App at 572-573, citing *Crossman v Am Ins Co*, 198 Mich 304, 308-311; 164 NW2d 428 (1917).[7] This Court has also stated that "the no-fault automobile liability insurance required in Michigan is not simply for the benefit of the policy holder or other insured" but is also intended to protect other persons from the "ravages of automobile accidents." *Allstate Ins Co v State Farm Mut Auto Ins Co*, 230 Mich App 434, 439; 584 NW2d 355 (1998). Therefore, "in the case of automobile liability insurance, the insurable interest appears to lie, at least to some degree, with an injured party rather than an insured." *Id.* Additionally, an insurable interest may be found, at least in some instances, in "the property, or the life insured" by an insurance policy. *Crossman*, 198 Mich at 308. Therefore, I am far from certain that the "insurable interest" necessary to support a specific liability insurance policy is limited to a property interest in a vehicle insured by that policy, as the majority appears to conclude. As noted earlier, the *Morrison* Court struggled with, but ultimately did not decide, whether parents who insure vehicles owned and driven by their children possess an insurable

---

[7] The trial court in *Morrison* further stated:

> Plaintiffs argue, and the trial court found, that Fisher had an insurable interest in the vehicle because she "certainly has an insurable interest in protecting her daughter from financial ruin." While any concerned parent clearly has an interest in his or her child's welfare, financial or otherwise, we need not take up the additional challenge of evaluating whether that interest is insurable—in other words, whether that interest is sufficiently tangible that it can truly be insured against.[4]
>
> ---
>
> [4] We do not mean to suggest that this issue should be lightly disposed of or that the trial court's conclusion is necessarily incorrect, only that we need not reach it. Parents who provide vehicles for their children are obviously interested in something other than personal pecuniary gain, and they are understandably concerned—not to mention of the view that it is a significant life event—when those children are finally "on their own." Furthermore, no-fault insurance is fundamentally not something from which one could profit anyway, its goal being indemnification rather than compensation. Considering, additionally, parents' natural interest in the well-being—physical, emotional, and financial—of their children, we would, at a minimum, conclude that the trial court's conclusion is worthy of serious consideration in an appropriate case. [*Morrison*, 286 Mich App at 573 and n4.]

interest in the "physical, emotional and financial" well-being of their children, see *Morrison*, 286 Mich App at 573 n 4.

In light of the fact-specific nature of the inquiry in question, I would decline to decide in the first instance whether, in the circumstances of this case, Marcus had an insurable interest insured by a policy that in part insured a vehicle that was owned and operated by his mother, but instead would await the trial court's initial determination of that issue.

It may be that the majority has reached the correct outcome in this case. But I believe that it shortcuts the required analysis and, equally as significantly, shortcuts the proper procedure. I would therefore reverse and remand this case to the trial court for further proceedings.

/s/ Mark T. Boonstra