*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MEMBERSELECT INSURANCE COMPANY,

        Plaintiff-Appellant,

v

KENNETH FLESHER, JOHN DOE, an unknown individual, NICHOLAS FETZER, PROGRESSIVE MARATHON INSURANCE COMPANY, and KELLY FETZER,

        Defendants-Appellees.

FOR PUBLICATION
April 23, 2020
9:00 a.m.

No. 348571
Genessee Circuit Court
LC No. 17-109828-CZ

Before: BOONSTRA, P.J., and RIORDAN and REDFORD, JJ.

BOONSTRA, P.J.

Plaintiff appeals by right the trial court's order denying its motion for summary disposition.[1] We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On July 4, 2016, Kenneth Flesher (Flesher) was operating his motorcycle when struck by a motor vehicle in a hit-and-run accident. At some point following the accident, Flesher came to

---

[1] The trial court's order was a final order because plaintiff sought a declaratory judgment that its insured lacked an insurable interest under the applicable insurance policy and that the policy was therefore void. The trial court's order concluding that the insured did have an insurable interest was therefore an order disposing of all claims and adjudicating the rights of all of the parties. MCR 7.202(6)(a)(i).

believe that the vehicle was a GMC Yukon.[2] The parties agree that Nicholas Fetzer (Nicholas)[3] owned the Yukon in question. Flesher brought suit against Nicholas alleging negligence.[4] MemberSelect Insurance Company (MemberSelect), which insured the Yukon under an insurance policy identifying Nicholas's mother, Kelly Fetzer (Kelly), as the principal named insured, assigned counsel to represent Nicholas in that action, but also brought this separate action for declaratory relief, seeking a declaration that Kelly had no insurable interest in the Yukon and that the policy covering it was therefore void. The trial court consolidated the two cases for purposes of discovery.

Kelly testified at her deposition that Nicholas had asked her to add the Yukon to her policy. She further testified that Nicholas had told her that it was too expensive for him to insure the Yukon under his own name. According to Kelly, she never rode in the vehicle and had no plans to ride in it in the future. Nicholas was 33 years old at the time of the accident and did not live with Kelly.

Nicholas testified that he owned the Yukon and had asked Kelly to insure it under her policy. He testified that he did so because the monthly premium payment would be significantly cheaper than if he insured it himself. Nicholas stated that Kelly paid the monthly premiums to MemberSelect and that he reimbursed her for the Yukon's share of those premiums.

Following discovery, motions for summary disposition were filed in both the negligence action and this declaratory action. In the negligence action, Nicholas and MemberSelect argued that Flesher had not raised a genuine issue of material fact regarding whether the Yukon was involved in the accident. In the declaratory action, MemberSelect argued that Kelly had no insurable interest at the time the policy was issued and that the policy was therefore void.

The trial court held a hearing on the motions. It first addressed the motion in the negligence action, noted that there was "admissible evidence that strongly implies that [the Yukon was not] the vehicle involved in the accident," and found that Flesher had failed to respond with evidence that raised a genuine issue of material fact on that issue. The trial court therefore granted the motion for summary disposition filed by Nicholas and MemberSelect.[5]

---

[2] It appears from the record that Flesher's sister, who did not witness the accident, observed that the Yukon was parked in the neighborhood where the accident occurred and had damage to its front end.

[3] We will refer to certain persons by their first names because of the commonality of surnames.

[4] The negligence action also involved other claims and parties not relevant to this appeal. For simplicity, we will not summarize those aspects of the trial court proceedings.

[5] It appears that aspects of the negligence action remain ongoing, and that no party has as yet appealed the trial court's order granting summary disposition in favor of Nicholas and MemberSelect in that case.

Counsel for MemberSelect then argued that, notwithstanding the trial court's ruling in the negligence action, the issue in the declaratory action was not moot. Addressing that issue, the trial court held that Kelly had an insurable interest:

> [B]ased on the rest of the filings and the Court's reading of the cases cited, I do find that there was an insurable interest. I did—there's no requirement that the insured actually own or be the registrant of a vehicle in order to have an insurable interest.
>
> In this case, it was the mother of defendant Fetzer, and the cases have acknowledged that there is a—I'm not or—let me try to find the exact language in terms of the family—the interest of the family. Hold on, the familial relationship. That she has an interest in her son's well-being both physically and financially.
>
> So, I would deny your motion to dismiss on the grounds that you've requested it, finding that there is an insurable interest by the mother.

Counsel for MemberSelect declined the trial court's subsequent offer to revisit his position regarding the issue of mootness. The trial court thereafter entered an order denying MemberSelect's motion and resolving the declaratory action, which, as discussed, functionally decided the case. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." We consider the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). All reasonable inferences are to be drawn in favor of the nonmovant. *Dextrom v Wexford County*, 287 Mich App 406, 415; 789 NW2d 211 (2010). Whether a party has an insurable interest to support the existence of a valid automobile liability insurance policy is also a question of law that we review de novo. *Morrison v Secura Ins*, 286 Mich App 569, 572; 781 NW2d 151 (2009).

## III. ANALYSIS

MemberSelect argues that the trial court erred by finding that Kelly had an insurable interest. We disagree.

Michigan law requires that a named insured have an insurable interest to support a valid automobile liability insurance policy. *Morrison*, 286 Mich App at 572, citing *Allstate Ins Co v State Farm Mut Auto Ins Co*, 230 Mich App 434, 439; 584 NW2d 355 (1998); see also *Clevenger v Allstate Ins Co*, 443 Mich 646; 505 NW2d 553 (1993). This requirement is not set forth statutorily in either the insurance code of 1956, MCL 500.100 et seq., the Michigan vehicle code, MCL 257.1 et seq., or the no-fault insurance act, MCL 500.3101 et seq. Rather, it "arises out of long-standing public policy." *Morrison*, 286 Mich App at 572, citing *Allstate*, 230 Mich App at

438. An insurance policy is void if there is no insurable interest. *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 258; 819 NW2d 68 (2012).

Before examining the contours of what may comprise an "insurable interest," we first look at the genesis of the public policy itself. As this Court has observed,

> Specifically, it arises out of the venerable public policy against "wager policies"; which, as eloquently explained by Justice COOLEY, are insurance policies in which the insured has no interest, and they are held to be void because such policies present insureds with unacceptable temptation to commit wrongful acts to obtain payment. *O'Hara v Carpenter,* 23 Mich 410, 416–417 (1871). Thus, "fundamental principles of insurance" require the insured to "have an insurable interest before he can insure: a policy issued when there is no such interest is void, and it is immaterial that it is taken in good faith and with full knowledge." *Agricultural Ins Co v Montague,* 38 Mich 548, 551 (1878). [*Morrison*, 286 Mich App at 572 (footnotes omitted).][6]

As this Court further stated in *Allstate*:

> [T]he "insurable interest" doctrine seems to find its origin in public policy concerns. Among those concerns is a desire to prohibit the use of insurance as a form of wagering, and a desire to prevent the creation of socially undesirable interests, such as where a creditor buys insurance on the life of a debtor for an amount greatly exceeding the amount of the debt, such that the creditor "might be [tempted] to bring the debtor's life to an unnatural end." *Lakin v Postal Life & Casualty Ins Co,* 316 SW2d 542, 551 (Mo, 1958). [*Allstate*, 230 Mich App at 438-439 (footnotes omitted).]

In other words, the requirement that an insured possess an insurable interest to obtain a valid insurance policy is based on a desire to avoid a situation in which an insured can receive a payout under a policy despite not actually having lost anything (and possibly with an incentive to act wrongfully to cause the payout). Given that this is the genesis of the public policy requiring an "insurable interest," we note, as did this Court in *Allstate*, that "[t]here is a legitimate question whether [automobile] liability insurance requires an 'insurable interest.' " The *Allstate* Court reasoned that "[t]hese public policy concerns are not implicated in the case of liability insurance, because the holder of the insurance cannot collect cash on the policy." *Id*. (footnote omitted). See also *Morrison*, 286 Mich App at 574.[7]

---

[6] The public policy thus did not arise in relation to automobile liability policies specifically, but instead likely arose before such policies were invented.

[7] This Court stated in *Morrison*:

> Furthermore, and even more significantly, the purpose behind the "insurable interest" requirement is not present here: we cannot imagine how [the insured], or

Nonetheless, this Court noted in *Allstate* that our Supreme Court in *Clevenger* "appears [to have] held that an insurable interest is necessary to support a valid automobile liability insurance policy. It also appears that the Supreme Court held that the insurable interest must belong to a 'named insured.'" *Allstate*, 230 Mich App at 437-438. *Allstate* noted that *Clevenger* "did not discuss the underlying rationale for the insurable interest requirement, nor did it cite any authority on the topic." *Id*. at 437. Moreover, *Allstate* noted that while it "recognized that many jurisdictions observe such a requirement," it had "failed to discover any underlying rationale for application of the insurable interest requirement to liability insurance." *Id*. at 439. Nonetheless, *Allstate* was obliged to apply the insurable interest requirement in the automobile liability insurance context before it "with *Clevenger* as our only guide" and "because *Clevenger* supports such a requirement." *Id*. at 439-440. *Allstate* thus recognized, as do we, that *Clevenger* appears to hold that the insurable interest requirement applies in this automobile liability insurance context. *Id*. at 440.[8] Unless and until the Supreme Court says otherwise, we are therefore bound by *Clevenger* and *Allstate*.

Given the resulting apparent applicability of the insurable interest requirement in this automobile liability insurance context, we must next examine the current state of the caselaw in an effort to ascertain the contours of what may comprise an "insurable interest." As noted, the "insurable interest" requirement seems to have been initially applied in the automobile liability insurance context in *Clevenger*, a case in which the insured had sold a vehicle, had transferred title to the purchaser, and had allowed the purchaser to drive the vehicle home with the insured's license plate, registration, and certificate of insurance. Along the way, the purchaser was involved in an automobile accident. Among the issues addressed by our Supreme Court was whether, notwithstanding that she was no longer the titleholder of the vehicle, the seller still had an insurable interest in the vehicle at the time of the accident, such that the seller's insurer still had a duty to

---

anyone in her position, could possibly be tempted by the transfer of ownership to commit any illegal or unethical act in order to collect proceeds from the insurance policy at issue. The "insurable interest" requirement arose in the context of insurance policies payable to the insured. In such a circumstance, it is obvious how an insured with "nothing to lose" might be tempted to commit socially intolerable acts for financial gain. But the nature of the no-fault insurance at issue here is radically different. Because the insurance here is less likely to be exploitable as a "wager policy," the basis for the "insurable interest" requirement is weakened. [*Morrison*, 286 Mich App at 574.]

[8] The *Allstate* Court explained:

We base our interpretation of *Clevenger* on the fact that (1) the Supreme Court addressed the defendant's "insurable interest" argument on the merits, rather than simply stating that there is no such requirement for automobile liability insurance, and (2) the Supreme Court only addressed the question whether the named insured, Williams, had an insurable interest, when it was clear that Preece had an insurable interest. [*Allstate*, 230 Mich App at 438 (footnote omitted).]

defend and indemnify under the policy. The Supreme Court held that because the seller remained the registrant of the vehicle, her "insurable interest was not contingent upon title of ownership to the automobile but, rather, upon personal pecuniary damage created by the no-fault statute itself." *Clevenger*, 443 Mich at 661.[9]

In *Allstate*, this Court again considered a situation in which the seller of a vehicle had transferred title to the buyer, but in that case had removed his license plate, registration, and certificate of insurance from the vehicle before turning over possession to the buyer. The Court noted that, in doing so, the seller in that case "did exactly what the Supreme Court [in *Clevenger*] suggested a seller do." *Id*., 230 Mich App at 440. Therefore, the Court held, the seller was not only no longer the owner of the vehicle but was also no longer the registrant of the vehicle. Having no remaining interest in the vehicle, the seller therefore had no insurable interest and the policy was void.

*Clevenger* and *Allstate* thus both addressed the insurable interest issue in the context of an owner or registrant of a motor vehicle. The reason they did so is that "owners and registrants have an insurable interest in their motor vehicles because the no-fault act requires owners and registrants to carry no-fault insurance and MCL 500.3102(2) makes it a misdemeanor to fail to do so." *Corwin*, 296 Mich App at 258. But neither *Clevenger* nor *Allstate* stand for the proposition that *only* owners or registrants can ever have an insurable interest in the context of an automobile liability insurance policy.

This brings us to *Morrison*, which (unlike *Clevenger* and *Allstate*) is somewhat more factually akin to the situation before us in that the named insured was the mother of the vehicle's adult driver. And at the time of the accident, like here, the son was the titleholder of the vehicle, the mother having transferred title to him shortly before the accident. But, unlike in this case, the mother was both the owner and the registrant of the vehicle at the time the policy was issued.[10] This Court noted that the mother "did have an 'insurable interest' at the time the insurance policy was bought and paid for, the insured-against risk did not change, the basis for the 'insurable interest' requirement is weak,[11] and the public policy favoring family units is strong." *Morrison*, 286 Mich App at 575. The Court further noted that "[t]he caselaw we have found on the genesis and development of the 'insurable interest' requirement shows that public policy forbids the *issuance* of an insurance policy where the insured lacks an insurable interest," and that "[p]ublic policy does not appear to require an otherwise valid insurance policy to become void automatically." *Id*. at 573-574 (emphasis in original). Based on these considerations, the Court

---

[9] As the Court in *Clevenger* noted, the no-fault act requires the registrant of a vehicle to provide certain insurance under threat of criminal sanctions. *Clevenger*, 443 Mich at 661.

[10] Also unlike in this case, the mother and son in *Morrison* resided together at all relevant times, and the son was listed as a "driver" of the vehicle under the insurance policy at issue.

[11] This comment by the *Morrison* Court hearkens back to its discussion, as we addressed earlier in this opinion, of whether the public policy that gave rise to the insurable interest requirement should even apply in the context of automobile liability insurance policies.

held that it did not need to decide whether the mother had an insurable interest at the time of the accident.[12]

Important to our consideration of the contours of an "insurable interest" is *Morrison*'s statement that "an insurable interest need not be in the nature of ownership, but rather can be any kind of benefit from the thing so insured or any kind of loss that would be suffered by its damage or destruction." *Morrison*, 286 Mich App at 572-573, citing *Crossman v Am Ins Co*, 198 Mich 304, 308-311; 164 NW2d 428 (1917). See also *Corwin*, 296 Mich App at 257, citing *Morrison*. Moreover, "[a]n insurable interest in property is broadly defined as being present when the person has an interest in property, as to the existence of which the person will gain benefits, or as to the destruction of which the person will suffer loss." *Madar v League Gen Ins Co*, 152 Mich App 734, 738; 394 NW2d 90 (1986), citing *Crossman v American Ins Co*, 198 Mich 304, 308–309; 164 NW 428 (1917).[13]

As mentioned, this Court has on several occasions also noted that "[a] person obviously has an insurable interest in his own health and well-being." *Corwin*. at 257 (citation omitted). And in *Allstate*, we also noted that "the no-fault automobile liability insurance required in Michigan is not simply for the benefit of the policy holder or other insured. Rather, it is intended 'to protect the members of the public at large from the ravages of automobile accidents.' " *Allstate*, 230 Mich App at 439, quoting *Clevenger*, 443 Mich at 651. Therefore, *Allstate* observed that "in the case of automobile liability insurance, the insurable interest appears to lie, at least to some degree, with an injured party rather than an insured." *Id*.

Although none of these cases decided the issue that confronts us in this case, they persuade us that we should leave intact the trial court's determination that Kelly had an insurable interest in this case. To begin with, the *Morrison* Court recognized that "[f]amily members share large portions of their lives and properties in ways they do not share with strangers" and that "[p]ublic policy clearly recognizes that the family unit is, and always has been, entitled to a special status in the law." *Id*. at 574-575. *Morrison* also noted, as did *Allstate*, that in the context of a no-fault

---

[12] We note that *Morrison* is among those cases that characterize an insurable interest as relating to a particular vehicle. However, in *Madar*, 152 Mich App 734; 394 NW2d 90 (1986), this Court held, with respect to personal protection benefits, that "there is no requirement that there be an insurable interest in a specific automobile since an insurer is liable for personal protection benefits to its insured regardless of whether or not the vehicle named in the policy is involved in the accident. A person obviously has an insurable interest in his own health and well-being. This is the insurable interest which entitles persons to personal protection benefits regardless of whether a covered vehicle is involved." *Id*. at 739. *Madar* is not binding on this Court, but may be persuasive. See MCR 7.215(J)(1). See also *Roberts v Titan Ins Co (On Reconsideration)*, 282 Mich App 339, 362; 764 NW2d 304 (2009), overruled on other grounds by *Spectrum Health Hospitals v Farm Bureau Mut Ins Co of Michigan*, 492 Mich 503; 821 NW2d 117 (2012); *Corwin*, 296 Mich App at 258.

[13] *Crossman* in turn cited to *Harrison v Fortlage*, 161 US 57; 16 S Ct 468; 40 L Ed 616 (1896).

automobile liability policy, "the basis for the 'insurable interest' requirement is weak," and further stated:

> Parents who provide vehicles for their children are obviously interested in something other than personal pecuniary gain, and they are understandably concerned—not to mention of the view that it is a significant life event—when those children are finally "on their own." Furthermore, no-fault insurance is fundamentally not something from which one could profit anyway, its goal being indemnification rather than compensation. Considering, additionally, parents' natural interest in the well-being—physical, emotional, and financial—of their children, we would, at a minimum, conclude that the trial court's conclusion is worthy of serious consideration in an appropriate case. [*Id*. at 573 n 4.]

We conclude, reaching the issue that this Court declined to reach in *Morrison*, that Kelly had a sufficient interest in the well-being of her adult child that we should not void her insurance policy on public policy grounds. An insurable interest may be found, at least in some instances, in "the property, or the life insured" by an insurance policy. *Crossman*, 198 Mich at 308. Although, unlike the adult child in *Morrison*, Nicholas does not live with Kelly (and in fact has several children of his own), we do not believe that is so dispositive a factor as to divest Kelly of an insurable interest; our courts have long noted that even a de minimis insurable interest may be insured, see *Morrison*, 286 Mich App at 572 n 2, citing *Hill v Lafayette Ins Co*, 2 Mich 476, 484-485 (1853). We conclude that the interest of a parent in an adult child's welfare, including such aspects as being covered for potential injury, being protected from financial ruin from injuring another, even the avoidance of civil infraction or other legal penalties for driving while uninsured, is sufficient to avoid temptations and social ills of "wager policies." *Allstate*, 230 Mich App at 438-439.

Moreover, although in the context of the no-fault act specifically, rather than in the context of applying a public-policy doctrine that existed before the act was enacted, our Supreme Court has recently held that a registrant or owner of a vehicle may satisfy his or her statutory obligation to "maintain" the security required by the no-fault act when "someone other than that owner or registrant purchased no-fault insurance for that vehicle." *Dye v Esurance Prop & Cas Ins Co*, 504 Mich 167, 193; 934 NW2d 674 (2019). The *Dye* Court stated that "determining whether no-fault benefits are available to an injured person does not depend on 'who' purchased, obtained, or otherwise procured no-fault insurance." *Id*. at 181.

While *Dye* concerned itself with the interpretation of specific provisions of the no-fault act, see MCL 500.3101(1), MCL 500.3113(b), we conclude that *Dye* demonstrates that tensions may exist between the goals of the no-fault act and the application of the "insurable interest" rule so as to void an insurance policy from its inception. It may be that the "insurable interest" requirement in fact conflicts with the goals of the no-fault act; as discussed, other panels of this Court have questioned the applicability of such a requirement for policies (specifically, automobile liability insurance policies) that do not readily lend themselves to gambling and rarely, if ever, result in non-compensatory cash payouts to an insured. In light of *Clevenger* and *Allstate*, we cannot go so far as to say that the insurable interest requirement does not apply in the automobile liability insurance context; rather, we merely hold under the circumstances of this case that Kelly had a sufficient insurable interest in Nicholas's well-being that we should not declare the policy void on

public-policy grounds.[14]  We would, however, be delighted if our Supreme Court would take the opportunity in this or some other case to clarify the insurable interest requirement, its applicability in the context of automobile liability insurance, and the continued viability of *Clevenger* in that regard.[15]

Affirmed.

/s/ Mark T. Boonstra
/s/ Michael J. Riordan
/s/ James Robert Redford

---

[14] We are mindful of the fact that public policy determinations are generally the province of the Legislature, see *Woodman v Kera LLC*, 486 Mich 228; 785 NW2d 1 (2010).  We thus express some consternation over the prospect that age-old judicial public policymaking in this sphere may have been extended, by rote application, to situations that were never originally intended, and we decline to exacerbate any such unintended consequences by further rote application here.  We believe it more appropriate to leave such matters to the Legislature.

[15] Nothing in this opinion should be read as limiting an insurer from asserting appropriate contract-based or other traditional defenses to coverage, such as fraud in the procurement of the policy, see, e.g., *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012), or from seeking rescission, and we offer no opinion about the applicability of any such claims or defenses in this case.