*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

ARTHUR BOOKER,

        Plaintiff,

and

MICHIGAN INSTITUTE OF PAIN &
HEADACHE, PC, doing business as METRO PAIN
CLINIC,

        Intervening Plaintiff-Appellant,

v

HARTFORD CASUALTY INSURANCE
COMPANY, HOME-OWNERS INSURANCE
COMPANY,

        Defendants-Appellees,

and

JOSEPH JONES-OLBRYS, JR., LINDA
BEYDOUN, SAFEWAY INSURANCE AGENCY,
and GRAND GENERAL INSURANCE AGENCY,

        Defendants.

UNPUBLISHED
July 16, 2020

No. 348491
Oakland Circuit Court
LC No. 2018-165514-NF

ARTHUR BOOKER,

        Plaintiff-Appellant,

and

MICHIGAN INSTITUTE OF PAIN &
HEADACHE, PC, doing business as METRO PAIN
CLINIC,

Intervening Plaintiff,

v

No. 348522
Oakland Circuit Court
LC No. 2018-165514-NF

HARTFORD CASUALTY INSURANCE
COMPANY, HOME-OWNERS INSURANCE
COMPANY, LINDA BEYDOUN, SAFEWAY
INSURANCE AGENCY, and GRAND GENERAL
INSURANCE AGENCY,

Defendants-Appellees,

and

JOSEPH JONES-OLBRYS, JR.,

Defendant.

Before: RIORDAN, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

PER CURIAM.

In these consolidated appeals,[1] plaintiff Arthur Booker and intervening plaintiff Michigan Institute of Pain & Headache PC, doing business as Metro Pain Clinic, appeal the grant of summary disposition in favor of defendants Home-Owners Insurance Company and Hartford Casualty Insurance Company. Booker additionally argues that the trial court erred by granting summary disposition in favor of defendants Linda Beydoun and Safeway Insurance Agency. For the reasons stated in this opinion, we reverse the trial court's dismissal of Booker's and Metro Pain Clinic's claims against Home-Owners and Hartford and remand for further proceedings. Because we conclude that Booker is entitled to personal protection insurance (PIP) benefits from one of the insurers, his claims against Beydoun, Safeway and defendant Grand General Insurance Company are moot for a lack of damages. Therefore, we affirm summary disposition in favor of those defendants.

---

[1] *Booker v Hartford Cas Ins Co*, unpublished order of the Court of Appeals, entered April 24, 2019 (Docket Nos. 348491, 348522)

-2-

# I. FACTS AND PROCEDURAL HISTORY

On May 4, 2017, Booker and Joseph Jones-Olbrys were involved in a motor-vehicle accident.[2] Booker suffered numerous injuries and incurred a significant amount of medical bills, expenses for attendant care and replacement services, and lost wages.

At the time of the accident, Booker was driving a 2004 Chevrolet Cavalier. He was the registered owner of that vehicle, which he purchased in December 2014. When he sought no-fault insurance for the vehicle, he told his insurance agent, Beydoun, that he had a handyman business. After learning that Booker used the vehicle for his business, Beydoun informed him that he was eligible for a commercial policy. Booker's application for a commercial policy was approved. He subsequently incorporated his business as Arthur Booker Handyman Services, Inc., and renewals of the policy were issued to that entity.

After the accident, Hartford denied Booker's claim for coverage. He brought suit seeking PIP benefits against Hartford or alternatively from Home-Owners, the no-fault insurer of Booker's sister, with whom he lived. In addition, Booker brought a negligence claim against Beydoun, the insurance agent who sold him the commercial policy; negligence and vicarious-liability claims against Safeway, the insurance agency that Beydoun worked for; and a negligence claim against Grand General, the wholesale insurance broker that assisted in processing the policy.

In its intervening complaint, Metro Pain Clinic brought a claim for PIP benefits against Hartford and Home-Owners based on the healthcare services Metro Pain Clinic had provided to Booker. Metro Pain Clinic's claims relied on an assignment of benefits executed by Booker. Metro Pain Clinic also attached a patient report that reflected a $70,560 outstanding balance for services provided to Booker.

Eventually, all defendants filed motions for summary disposition. Home-Owners argued that Hartford, as Booker's personal insurer, was the highest priority insurer. Home-Owners alternatively argued that, if it was determined that Booker did not maintain his own automobile insurer as the owner of the vehicle involved in the accident, then he would be precluded from obtaining PIP benefits. The trial court agreed on both counts and granted Home-Owners summary disposition.

Hartford then sought summary disposition on the grounds that Booker was precluded from receiving PIP benefits by MCL 500.3113(b) because he failed to "maintain security" on the vehicle he owned as required by MCL 500.3101(1). In granting Hartford's motion, the trial court determined that Booker was the sole owner and registrant of the vehicle involved in the accident and that Booker Handyman Services was the sole named insured under the Hartford policy. Because Booker Handyman Services was not an owner or registrant of the vehicle, the trial court held that the business did not have an insurable interest in the vehicle. The court likewise concluded that because Booker owned and registered but did not personally insure the vehicle, he

---

[2] Booker does not challenge the trial court's order dismissing his claim against Joseph Jones-Olbrys, Jr. for failure to serve him and diligently pursue the claim.

and Metro Pain Clinic, as his assignee, were precluded from recovering PIP benefits under MCL 500.3113(b).

The trial court granted Beydoun and Safeway's joint motion for summary disposition partly on the grounds that they did not have a "special relationship" with Booker that required them to advise him regarding the adequacy of the commercial policy's coverage. The trial court also granted summary disposition to Grand Central after finding that no agency relationship existed between Grand Central and Beydoun and Safeway and no special relationship existed between Grand General and Booker.

## II. ANALYSIS

Booker's position, both below and on appeal, is relatively simple: he maintains that he is entitled to PIP benefits from some entity. Primarily, he contends that he is entitled to PIP benefits from Hartford because it insured the vehicle he owned and was driving when he was involved in the accident. Alternatively, he argues that he is entitled to PIP benefits from Home-Owners because he lived with his sister who had a Home-Owners automobile-insurance policy. Metro Pain Clinic generally agrees with Booker's position. Conversely, both insurers argue that Booker is precluded from recovering PIP benefits because his company, Booker Handyman Services, was the only "named insured" for the vehicle he owned and was driving at the time of the accident. They also argue Booker Handyman Services did not have an insurable interest in that vehicle, and, therefore, that the Hartford policy is void. The trial court agreed with the insurers' arguments. We do not.[3]

## A. DUTY TO MAINTAIN NO-FAULT SECURITY

We will first address the trial court's ruling that Booker, and by extension Metro Pain Clinic, were precluded from obtaining PIP benefits because Booker did not personally maintain security for the vehicle involved in the accident.

---

[3] We review de novo a trial court's decision to grant or deny a motion for summary disposition. See *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Although some of the defendants cited both MCR 2.116(C)(8) and (C)(10) in their motions, all of the parties, and presumably the trial court, relied on evidence beyond the pleadings. Consequently, we will treat the motions as having been granted under subrule (C)(10). See *Krass v Tri-Co Security, Inc*, 233 Mich App 661, 664-665; 593 NW2d 578 (1999). Summary disposition should be granted under MCR 2.116(C)(10) if, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834 (1995). A court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties, and view that evidence in the light most favorable to the nonmoving party to determine if a genuine issue of material fact exists. MCR 2.116(G)(5); *Maiden,* 461 Mich at 118-120.

Michigan's no-fault act requires that "the owner or registrant of a motor vehicle required to be registered in this state . . . maintain security for payment of benefits under personal protection insurance and property protection insurance as required under this chapter, and residual liability insurance." MCL 500.3101(1). Per MCL 500.3113(b), if the owner or registrant of a vehicle involved in the accident fails to maintain the required security, then he or she is barred from recovery of PIP benefits. Home-Owners and Hartford argue that MCL 500.3113(b) applies in this case because Booker, as the owner or registrant of the vehicle at issue, failed to personally maintain security as required by MCL 500.3101(1).

The Michigan Supreme Court rejected this argument in *Dye v Esurance Prop & Cas Ins Co*, 504 Mich 167, 173; 934 NW2d 674 (2019),[4] where it held that "an owner or registrant of a motor vehicle involved in an accident is not excluded from receiving no-fault benefits when someone other than that owner or registrant purchased no-fault insurance for that vehicle because the owner or registrant of the vehicle may 'maintain' the insurance coverage required under the no-fault act even if he or she did not purchase the insurance." In other words, "an owner or registrant of a motor vehicle is not required to personally purchase no-fault insurance for his or her vehicle in order to avoid the statutory bar to PIP benefits," so long as someone maintains no-fault insurance for the vehicle. *Id*. at 172-173.

Thus, Booker was not required to personally insure the vehicle. He satisfied MCL 500.3101(1) by procuring insurance for the vehicle through Booker Handyman Services and was therefore not precluded by MCL 500.3113(b) from recovering PIP benefits.

## B. INSURABLE INTEREST

We next address the trial court's determination that Booker Handyman Services did not have an insurable interest in the vehicle.

"[U]nder Michigan law, an insured must have an insurable interest to support the existence of a valid automobile liability insurance policy." *Morrison v Secura Ins*, 286 Mich App 569, 572; 781 NW2d 151 (2009) (quotation marks and citation omitted). This requirement "arises out of the venerable public policy against 'wager policies'; which . . . are insurance policies in which the insured has no interest, and they are held to be void because such policies present insureds with unacceptable temptation to commit wrongful acts to obtain payment." *Id*. (citation omitted). Importantly, "an insurable interest need not be in the nature of ownership, but rather can be any kind of benefit from the thing so insured or any kind of loss that would be suffered by its damage or destruction." *Id*. at 572-573 (quotation marks and citation omitted). Clearly, this language— "*any kind* of benefit . . . or *any kind* of loss"—is broad. *Id*. (emphasis added).

---

[4] *Dye* was decided after the trial court issued its opinions and orders granting summary disposition, but Supreme Court decisions are generally "given full retroactive effect," *Bezeau v Palace Sports & Entertainment, Inc*, 487 Mich 455, 462; 795 NW2d 797 (2010), and no parties argues against the retroactive application of *Dye* in this case.

Here, the trial court held that Booker Handyman Services did not have an insurable interest because Booker, not the business, owned the vehicle. Because ownership and insurable interest are not synonymous concepts, the trial court's analysis did not accurately reflect Michigan law.

*AB Petro Mart, Inc v Ali T Beydoun Ins Agency, Inc*, 317 Mich App 290, 299; 892 NW2d 460 (2016), is instructive and analogous to present circumstances. In that case, an automobile crashed into a gas pump at a gas station owned by a sole proprietor through AB Petro Mart, Inc. (collectively "the plaintiffs"). *Id*. at 293. Petro Metro maintained insurance for the gas pumps, which were owned by the proprietor in his personal capacity. *Id*. The insurer denied coverage, and the trial court dismissed the plaintiffs' claim to enforce the policy, holding that Petro Mart did not have an insurable interest in the gas pumps. *Id*. at 295. This Court reversed that ruling, explaining that Petro Mart's lack of ownership or leasehold interest in the gas pumps did not, by itself, "preclude finding an insurable interest." *Id*. at 299-300. We explained that "the salient inquiry to answer when determining whether an insurable interest exists revolves around whether the insured would suffer a direct, pecuniary loss from the property's destruction." *Id*. at 300. We answered that question affirmatively in that case for the following reasons:

> Clearly, Petro Mart would gain some advantage by the continuing existence of the gas pumps and, conversely, would suffer some loss or disadvantage by the destruction of the pumps. Importantly, this is not an instance where the loss Petro Mart suffered was "indirect or sentimental"; instead, because Petro Mart generated income from the sale of gasoline through the use of the pumps, the loss of one of those gas pumps resulted in a "direct and actual" pecuniary loss. The fact that Petro Mart was not financially responsible for repairing any damage to the pumps is not controlling—it still had a pecuniary interest because of the commercial business it operated. We note that while any lost business profits appear to not be recoverable under the insurance policy, this fact is immaterial in determining whether Petro Mart had an insurable interest in the gas pumps themselves. Therefore, because Petro Mart had a clear, substantial, and direct pecuniary interest in the pumps, we hold that it had an insurable interest in the damaged gas pump. . . . [*Id*. at 300-301.]

In this case, although Booker Handyman Services was not the titled owner of the vehicle involved in the accident, the business had a pecuniary interest in the vehicle. Booker testified at deposition that he used the vehicle for "[c]arrying the tools around or the cleaning products in the trunk of it" and used it for business purposes "[m]aybe four times a week." His testimony was very clear: "I used the Cavalier on all the jobs." He also testified that "[i]t was purchased for me and the business," i.e., "[f]or business and personal use." Given this testimony, it is apparent that Booker Handyman Services stood to gain by the continued existence of the vehicle and, conversely, would suffer some loss or disadvantage by its destruction. Moreover, Booker's decision to maintain insurance through a corporate entity does not implicate the concerns associated with wager policies. Booker Handyman Services had no incentive to harm Booker or the vehicle, and it is Booker rather than the business who will receive payment of PIP benefits under the policy if Hartford is found to be the highest priority insurer.

The insurers take the position that this Court's opinion in *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242; 819 NW2d 68 (2012), requires the conclusion that Booker Handyman Services lacked an insurable interest. In that case, the Corwins were injured while driving a motor

vehicle they leased from Chrysler LLC pursuant to an employee retirement program. *Id*. at 248-250. The vehicle was insured by Chrysler Insurance and Chrysler LLC was listed as the named insured. *Id*. at 248-249. The policy further provided "that Chrysler Insurance is not responsible for PIP benefits if the Corwins are entitled to PIP benefits as the named insureds in another policy." *Id*. at 247. The Corwins had insurance policies covering a separate vehicle and motor home, but neither insurer had paid PIP benefits when the Corwins brought suit against Chrysler. *Id*. at 250.

We held that reformation of the Chrysler policy to include the Corwins as named insureds was required for two reasons. Following *State Farm Mut Auto Ins Co v Enterprise Leasing Co*, 452 Mich 25; 549 NW2d 345 (1996), we determined that the Chrysler policy "violates the intent of the no-fault act by shifting primary liability for no-fault coverage." *Corwin*, 296 Mich App at 262. That is, the policy allowed Chrysler Insurance to avoid payment of benefits whenever the insured was a named insured in a different no-fault policy. *Id*. at 262-263. We also held that reformation was required because Chrysler LLC and its United States subsidiaries, the named insureds in the policy, did not have an insurable interest in the leased vehicle. In reaching that conclusion, we were primarily persuaded by the fact that Chrysler and its subsidiaries were not owners or registrants of the vehicle at issue. *Id*. at 258. Specifically, they could not have been "owners" or "registrants" as that term is statutorily defined in this context. See MCL 500.3101(2)(l)(*iii*) ("A person that holds the legal title to a motor vehicle or motorcycle, *other than a person engaged in the business of leasing motor vehicles* or motorcycles that is the lessor of a motor vehicle or motorcycle under a lease that provides for the use of the motor vehicle or motorcycle by the lessee for a period that is greater than 30 days.") (emphasis added). Because they could not be owners or registrants of the leased vehicles, we concluded that "Chrysler LLC and its United States subsidiaries do not have an insurable interest contingent upon 'personal pecuniary damage created by the no-fault statute itself.' " *Id*., quoting *Clevenger v Allstate Ins Co*, 443 Mich 646, 661; 505 NW2d 553 (1993). *Corwin* additionally emphasized that Chrysler and its subsidiaries could not "suffer accidental bodily injury." *Id*. at 259.

Significantly, after determining that there was no insurable interest supporting the policy, the *Corwin* Court did not simply void the policy, which is the result advocated by the insurers here. Rather, the Court relied on the lack of an insurable interest as a reason to reform the policy: "The Chrysler Insurance policy must be reformed to be compatible with public policy so that there is an insurable interest belonging to the named insured." *Id*. at 260. Thus, if the insurers are correct that Booker Handyman Services did not have an insurable interest in the vehicle, *Corwin* would support plaintiffs' request for reformation of the policy, which will be discussed below.

In any event, we conclude that *Corwin* is sufficiently distinguishable from this case. The relationship at issue in *Corwin*, i.e., the relationship between Chrysler, its subsidiaries and their many lease-holding customers, is quite different from the relationship at issue here, i.e., a relationship between an incorporated handyman-services business and its owner and sole shareholder. Chrysler did not benefit from the use of its leased vehicles or its lease-holders' "health and well-being," *id*. at 259, nor suffer a loss from the damage to either. The same cannot be said of Booker Handyman Services with respect to its sole owner and the vehicle it relied on for "all the jobs." Further, as discussed in relation to *AB Petro*, the business had a pecuniary

interest in the vehicle itself.[5]  Accordingly, *Corwin* does not compel the conclusion that Booker Handyman Services lacked an insurable interest in the vehicle such that the policy must be voided on public policy grounds.  We believe that *AB Petro* is the more analogous decision and strongly supports the conclusion that Booker's business had a sufficient interest to uphold the policy.

In sum, because there was no-fault insurance covering the vehicle owned by Booker, and because the purchaser of that coverage, Booker Handyman Services, had an insurable interest in the vehicle, Booker was entitled to PIP benefits for the injuries he sustained.  The trial court erred by ruling otherwise and granting summary disposition on those grounds.

## C.  PRIORITY

Because Booker is entitled to PIP coverage, the question becomes which insurer—Home-Owners or Hartford—is in priority to pay PIP benefits.  See *Dye*, 504 Mich at 190 n 61 (explaining the difference between "coverage under the no-fault act [and] priority under the no-fault act.").

"When determining the priority of insurers liable for no-fault PIP benefits, courts must examine MCL 500.3114."  *Corwin*, 296 Mich App at 254.  "Generally, pursuant to MCL 500.3114(1), a person must seek [PIP] benefits from his or her own insurer."  *Titan Ins Co v American Country Ins Co*, 312 Mich App 291, 298; 876 NW2d 853 (2015).  MCL 500.3114(1) provides that "[e]xcept as provided in subsections (2), (3), and (5), a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident."

The trial court granted Home-Owners summary disposition partly because it concluded that Booker "must seek no-fault benefits from his own insurer, Defendant Hartford."  However, as written, the Hartford policy as applied to Booker does not fall within MCL 500.3114(1).  "The phrase 'the person named in the policy' is synonymous with the term 'the named insured,' " *Corwin*, 296 Mich App at 255, which Booker undisputedly is not.

Plaintiffs argue that equitable reformation of the Hartford policy to include Booker as a named insured is required because the business, a corporate entity, could never be injured in a motor-vehicle accident, and so the policy coverage is illusory.  This is similar to the argument that prevailed in *Corwin*, 296 Mich App at 262-263.  Like Chrysler Insurance, Hartford takes the

---

[5] We also note that while Chrysler and its subsidiaries were precluded from being "owners" of the vehicle pursuant to MCL 500.3101(2)(l)(*iii*), Beydoun and Safeway argue that Booker Handyman Services satisfies the definition of owner provided in MCL 500.3101(2)(l)(*i*): "A person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days."  Home-Owners also suggests that the business was a constructive owner of the vehicle under this definition for purposes of determining priority. We need not decide this issue because we conclude that *Corwin* is distinguishable even if Booker Handyman Services was not an owner of the vehicle.  But the parties may raise this argument on remand when addressing priority.

position that its policy would *never* provide any coverage to Booker.[6]  Home-Owners, however, argues that reformation is not necessary because the Hartford policy does cover Booker's claim pursuant to MCL 500.3114(3), which provides:

> (3) An employee, his or her spouse, or a relative of either domiciled in the same household, who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle.

Home-Owners argues that MCL 500.3114(3) applies in this case because Booker was self-employed.  See *Celina Mut Ins Co v Lake States Ins Co*, 452 Mich 84; 549 NW2d 834 (1996).  MCL 500.3114(3)'s applicability to this case was not raised or addressed in the trial court given the court's ruling that plaintiffs were precluded from recovering PIP benefits, and only Home-Owners briefed this issue on appeal.

Although "we might exercise our discretion to review the issue as a question of law for which the necessary facts have been presented, this Court should decline to do so when it would require us to construct and evaluate our own arguments." *Aguirre v Dep't of Corrections*, 307 Mich App 315, 326; 859 NW2d 315 (2014).  Accordingly, we remand this matter for additional argument and a decision from the trial court.  See *id*.  Specifically, the parties should address and the trial court should first determine whether Hartford has priority pursuant to MCL 500.3114(3).  If the court finds that this subsection applies, then the policy is not an illusory contract and reformation would not be warranted.  If the court concludes that MCL 500.3114(3) does not apply, however, then it must consider whether reformation of the Hartford policy is equitable under the circumstances of this case.  Reformation of the policy to include Booker as a named insured would result in Hartford being first in priority under MCL 500.3114(1).  If the court declines to reform the policy, then Home-Owners would have priority over Booker's claim for PIP benefits because it insured Booker's resident relative at the time of the accident.  See MCL 500.3114(1).  Given this possibility, the trial court erred in granting Home-Owners summary disposition on the grounds that it could never be the highest priority insurer.

### D.  BEYDOUN, SAFEWAY AND GRAND GENERAL

Lastly, Booker argues that Beydoun and Safeway should not have been granted summary disposition because they had a special relationship with Booker or Booker Handyman Services

---

[6] Hartford maintains that the policy's coverage is not illusory "because PIP coverage in the Policy would have been available in certain circumstances had the insured, Arthur Booker Handyman Services, Inc., been a viable corporation and actually 'got[ten] off the ground.' "  This statement refers to Booker's deposition testimony in which he agreed that his business did not "get off the ground," although his testimony makes clear that the business had customers.  Hartford does not elaborate on the "certain circumstances" in which there would be coverage.  In any event, neither the policy nor the no-fault act conditions coverage on the degree to which the business has proven successful.

and a duty to correctly advise him regarding the coverage of Hartford's commercial insurance policy. We need not address this issue because Booker's negligence claims against Beydoun and Safeway are rendered moot by our ruling that he is entitled to PIP benefits from one of the insurers. See *New Freedom Mtg Corp v Glove Mtg Corp*, 281 Mich App 63, 69-70; 761 NW2d 832 (2008), overruled in part on other grounds *Bank of America, NA v First American Title Ins Co*, 499 Mich 74; 878 NW2d 816 (2016) ("[I]f there are no damages, it is appropriate to grant summary disposition on fraud, misrepresentation, breach of contract, and negligence claims."). Further, while Booker's brief on appeal does not address the trial court's decision to grant Grand General's motion for summary disposition, this claim is also moot in light of our rulings.

## III. CONCLUSION

We reverse the trial court's opinions and orders granting Home-Owners' and Hartford's motions for summary disposition and remand this matter for further proceedings to determine which of the two insurers is first in priority. We affirm the trial court's grant of summary disposition to Beydoun, Safeway and Grand General, but on the grounds of mootness, not on the merits.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause